UNITED STATES, Appellee

v.

Joshua P. LOVETT, Staff Sergeant
U.S. Air Force, Appellant

No. 03-0072

Crim. App. No. 33947

United States Court of Appeals for the Armed Forces

Argued October 19, 2005, and February 7, 2006

Decided June 6, 2006

ERDMANN, J., delivered the opinion of the court, in which
GIERKE, C.J., and CRAWFORD, EFFRON, and BAKER, JJ., joined.

Counsel

For Appellant:  Major Karen L. Hecker (argued); Colonel Carlos
L. McDade, Major Bryan A. Bonner, Major Terry L. McElyea, Major
Sandra K. Whittington, Major James M. Winner, and Captain David
P. Bennett (on brief).

For Appellee:  Major Michelle M. Lindo McCluer (argued);
Lieutenant Colonel Robert V. Combs, Lieutenant Colonel Gary F.
Spencer, and Major John C. Johnson (on brief).

Military Judges:  Bruce T. Brown and Linda S. Murnane

**This opinion is subject to revision before final publication.**

United States v. Lovett, No. 03-0072/AF

Judge ERDMANN delivered the opinion of the court.

Staff Sergeant Joshua P. Lovett was charged with possessing Percocet, raping a child under the age of twelve, soliciting another to commit murder, and soliciting another to plant crack cocaine, in violation of Articles 112a, 120, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 912a, 920, 934 (1994), respectively.  Lovett entered pleas of not guilty and following a general court-martial was found guilty of possessing Percocet, raping a child, and the lesser included offense of soliciting another to make his wife "disappear or to wrongfully prevent her from appearing in a civil or criminal proceeding." He was sentenced to a dishonorable discharge, confinement for fifteen years, forfeiture of all pay and allowances, and reduction to pay grade E-1.  The convening authority approved the sentence and, on initial review, the United States Air Force Court of Criminal Appeals affirmed the findings and sentence in an unpublished decision.  United States v. Lovett, No. ACM 33947, 2002 CCA LEXIS 230, at *31-*32, 2002 WL 31235410, at *11 (A.F. Ct. Crim. App. Sept. 9, 2002).

We granted Lovett's initial petition for review and found a fatal variance between the "precise specification" of the solicitation charge and "the general findings as returned by the members."  United States v. Lovett, 59 M.J. 230, 237 (C.A.A.F. 2004).  We set aside the decision of the Air Force court as to

2

United States v. Lovett, No. 03-0072/AF

Charge II (solicitation) and the sentence, and returned the case to the Judge Advocate General of the Air Force for remand to the lower court, with direction that that court could either reassess the sentence or order a sentence rehearing. Id.

The Air Force court reassessed the sentence and affirmed the dishonorable discharge, confinement for fourteen years, forfeiture of all pay and allowances, and reduction to E-1. United States v. Lovett, No. ACM 33947, 2004 CCA LEXIS 201, at *7, 2004 WL 1932870, at *3 (A.F. Ct. Crim. App. Aug. 25, 2004). Lovett again petitioned this court for a grant of review and we granted two issues.[1] The first issue is whether life without eligibility for parole (LWOP) was an authorized punishment for rape of a child under twelve years of age after November 18, 1997. The second issue is whether Lovett was subjected to cruel

---

[1] We granted review of the following issues on April 15, 2005:

> I. WHETHER THE MILITARY JUDGE ERRED BY INSTRUCTING THE PANEL THAT THE MAXIMUM SENTENCE WAS LIFE WITHOUT PAROLE WHEN THAT PUNISHMENT WAS NOT AN AUTHORIZED SENTENCE AS ITS IMPLEMENTATION HAD NOT YET BEEN ORDERED BY THE PRESIDENT, OR, IN THE ALTERNATIVE, WHERE INSUFFICIENT EVIDENCE WAS PRESENTED AT TRIAL TO PROVE THAT ANY ALLEGED ACTS OF RAPE HAD OCCURRED AFTER 19 NOVEMBER 1997.

> II. WHETHER APPELLANT WAS SUBJECTED TO CRUEL AND UNUSUAL PUNISHMENT WHILE IN POST-TRIAL CONFINEMENT.

61 M.J. 146 (C.A.A.F. 2005).

United States v. Lovett, No. 03-0072/AF

and unusual punishment while in post-trial confinement.  After oral argument on the second granted issue, we determined that "additional briefs from the parties would be helpful with respect to whether confinement for life without the possibility of parole was a permissible part of the maximum sentence in this case."  United States v. Lovett, 62 M.J. 321 (C.A.A.F. 2005). We subsequently specified an additional issue.[2]

We hold that LWOP was an authorized punishment for the offense of rape of a child under the age of twelve after November 18, 1997.  We need not decide whether the Air Force Court of Criminal Appeals erred in determining when the sexual acts with MM occurred because we conclude that any instructional error on LWOP by the military judge was harmless.  Finally, we hold that Lovett has failed to establish an Eighth Amendment "cruel and unusual punishment" claim and therefore we affirm the Air Force Court of Criminal Appeals.

---

[2] We specified the following issue:

> WHETHER THE COURT OF CRIMINAL APPEALS ERRED IN FINDING THAT "SOME OF THE APPELLANT'S SEXUAL ACTS WITH MM OCCURRED AFTER 18 NOVEMBER 1997" WHERE THE MEMBERS RENDERED A GENERAL VERDICT.  See United States v. Walters, 58 M.J. 391 (C.A.A.F. 2003).

62 M.J. 321 (C.A.A.F. 2005).

4

DISCUSSION[3]

1.  Life Without Eligibility for Parole.

The first granted issue in this case questions whether LWOP was authorized for Lovett's offense of raping a child under the age of twelve.  The President signed legislation[4] enacting LWOP into law on November 18, 1997.[5]  The President did not, however, make conforming amendments to the Manual for Courts-Martial (MCM) until April 11, 2002.[6]

Lovett's initial claim is that LWOP was not an available punishment in trials by courts-martial until April 11, 2002, when the President amended the MCM.  Because all the "divers occasions" charged under Article 120, UCMJ, occurred prior to April 11, 2002, Lovett argues that the military judge erred by instructing the members that LWOP was an authorized punishment in his case.  In United States v. Stebbins, 61 M.J. 366, 368 (C.A.A.F. 2005), we held that LWOP was an authorized punishment

---

[3] As the underlying facts were fully set forth in United States v. Lovett, 59 M.J. 230 (C.A.A.F. 2004), we will not restate them here.

[4] National Defense Authorization Act for Fiscal Year 1998, Pub. L. No. 105-85, § 581, 111 Stat. 1629, 1759 (1997) (codified at Article 56a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 856a (2000)).

[5] Signing Statement, 33 Weekly Comp. Pres. Doc. 1861 (Nov. 18, 1997).

[6] Exec. Order No. 13,262, 67 Fed. Reg. 18,773, 18,779 (Apr. 11, 2002).

for rape of a child under twelve years of age committed after November 18, 1997, the date upon which the President signed the LWOP legislation into law.[7]  Therefore LWOP was an authorized sentence for the rape of a child after November 18, 1997.

Alternatively, Lovett argues that LWOP is not an available punishment in his case because the evidence does not prove that any single act of alleged rape occurred after November 18, 1997. Because the divers occasions alleged in the specification of rape encompassed periods of time both before and after that date, Lovett claims that at least one of the divers acts must have been found to have occurred after November 18, 1997 in order to support LWOP as an authorized punishment in his case.

The Air Force Court of Criminal Appeals considered this issue in its initial review.  That court, utilizing its Article 66(c), UCMJ, 10 U.S.C. § 866(c) (2000), factfinding power stated, "Based upon these facts, we find that some of the appellant's sexual acts with MM occurred after 18 November 1997."  Lovett, 2002 CCA LEXIS 230, at *31, 2002 WL 31235410, at *11.  The general verdict of guilt rendered by the court members, however, did not reflect any finding by the members

---

[7] See also United States v. Ronghi, 60 M.J. 83, 86 (C.A.A.F. 2004) (LWOP authorized punishment for premeditated murder committed after November 18, 1997); United States v. Christian, 63 M.J. __ (C.A.A.F. 2006) (LWOP authorized punishment for forcible sodomy of a child under twelve years of age committed after November 18, 1997).

that a single act of rape occurred after the effective date of LWOP. Thus we specified an issue concerning whether the Air Force court could make such a finding in light of United States v. Walters, 58 M.J. 391 (C.A.A.F. 2003).

Having considered that specified issue, we conclude that we need not determine whether the Air Force court erred by making this factual determination.[8] Even if we were to conclude that the lower court erred and that LWOP was not an available punishment under the facts of this case, any error would be harmless. Without LWOP as an available punishment, Lovett would have nonetheless faced a maximum punishment that included confinement for life. See Manual for Courts-Martial, United States pt. IV, para. 45.e(1) (1998 ed.); see also Stebbins, 61 M.J. at 368 (noting that prior to the adoption of LWOP, confinement for life was an authorized punishment for rape). Despite this maximum, trial counsel argued for a term of confinement of thirty-five years. And, despite the Government's argument for thirty-five years of confinement and the

---

[8] Although we do not reach the specified issue, we note that the Government concedes in its brief: "The United States concedes that, given the nature of the evidence and the general verdict the members rendered in this pre-Walters case, it is difficult to pinpoint with certainty whether the members convicted [Lovett] of any rapes which occurred after 18 November 1997, when the maximum confinement for a rape charge increased from life to life without parole."

instructions that LWOP was an authorized punishment[9], the members returned a sentence that included only fifteen years confinement. Even assuming LWOP was not an available punishment and the military judge's instruction to the contrary was erroneous, we are convinced that the members were unaffected by the instruction. Any error with respect to the maximum punishment was therefore harmless.

2.  Cruel and Unusual Punishment.

"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. Const. amend. VIII; see also Article 55, UCMJ, 10 U.S.C. § 855 (2000). The Supreme Court has stated that punishments violate the Eighth Amendment when they "are incompatible with the evolving standards of decency that mark the progress of a maturing society, or which involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 102-03 (1976) (internal quotation marks and citations omitted). Lovett asserts that he should be awarded confinement credit because he was forced to endure oppressive, dangerous, and unsanitary conditions that violated the Eighth Amendment while he was confined at the "old" United States Disciplinary Barracks

---

[9] Although general instructions on findings by exceptions and substitutions were given in this case, the better practice in this situation is for the military judge to clearly instruct the members as to the scope of the pertinent dates and their options or require appropriate special findings.

(USDB)[10] between July 23, 1999 and September 30, 2002.  We conclude that even if the facts as asserted by Lovett are true, he has failed to meet his burden of establishing grounds for relief.

We have no findings of fact with respect to this issue. Lovett's claim of cruel and unusual punishment arose post-trial and is necessarily supported by extra-record matter.  We have granted Lovett's motions to submit a number of documents relating to the conditions of his post-trial confinement at the old USDB:  (1) an undated declaration by Lovett; (2) a declaration by Lovett dated February 22, 2005; (3) an American Correctional Association Visiting Committee Report for the USDB dated December 9, 1999; and (4) two stipulations of expected testimony from a separate judicial proceeding litigating an issue similar to this one.

Lovett's declarations assert that he was exposed to the following conditions during his confinement at the old USDB:

1. a cell that was only four feet wide, twelve feet long, and seven and one-half feet high;

2. inadequate ventilation during periods of extreme temperatures;

3. falling pieces of walls and ceilings that would strike Lovett;

---

[10] In 1994, the Secretary of the Army decided to construct a new U.S. Disciplinary Barracks (USDB).  Construction commenced in the summer of 1998.  Lovett was apparently transferred to the new facility on or about September 30, 2002.

4. vermin in the dining facility;

5. sewage backed up in the serving and eating areas of the dining facility during heavy rains;

6. lead-based paint on the walls and ceilings of Lovett's cell;

7. asbestos coating on the pipes in the dry cleaning facility where Lovett worked;

8. dry cleaning solvent leaking from the machines in the dry cleaning facility creating a risk of electrocution and exposure to fumes from the solvent;

9. extended periods of lockdown, through no fault on Lovett's part, during which he was not permitted to exercise or shower;

10. meals served during these lockdowns included stale foods and milk that was beyond its expiration date; and,

11. high iron and lead content from the faucet providing the only drinking water available in the cell.

Lovett's declarations also assert that he made a number of complaints about these conditions to various officials or agencies including two Commandants of the USDB, the staff judge advocate, the chief of staff, the "Department of the Air Force, Office of the Assistant Secretary", and the Air Force Clemency and Parole Board. Lovett also asserts that he was told that a complaint under Article 138, UCMJ, 10 U.S.C. § 938 (2000), was an inappropriate means of addressing "matters relating to . . .

confinement" and therefore he joined a class action law suit challenging the conditions at the old USDB.

Although the Government has submitted extra-record matters contesting the facts within Lovett's submissions, we do not need to remand this case for factfinding if, under the principles in United States v. Ginn, 47 M.J. 236, 248 (C.A.A.F. 1997), "we can determine that the facts asserted, even if true, would not entitle appellant to relief."  United States v. White, 54 M.J. 469, 471 (C.A.A.F. 2001); see also United States v. Avila, 53 M.J. 99, 101 n.1 (C.A.A.F. 2000).  We determine whether the facts alleged constitute cruel and unusual punishment de novo. White, 54 M.J. at 471 (citing 2 Steven A. Childress & Martha S. Davis, Federal Standards of Review § 7.05 (3d ed. 1999)).

As noted above, the Eighth Amendment prohibits two types of punishments:  (1) those "incompatible with the evolving standards of decency that mark the progress of a maturing society" or (2) those "which involve the unnecessary and wanton infliction of pain."  Estelle, 429 U.S. at 102-03 (internal quotation marks and citations omitted).  We apply the Supreme Court's interpretation of the Eighth Amendment in the absence of any legislative intent to create greater protections in the UCMJ.  See White, 54 M.J. at 473; Avila, 53 M.J. 101.  Because Lovett makes no claim that the conditions of his confinement violate any greater protections afforded by Article 55, UCMJ, we

United States v. Lovett, No. 03-0072/AF

need not determine the extent to which that statute may be broader than the Eighth Amendment.  See United States v. Matthews, 16 M.J. 354, 368 (C.M.A. 1983) (noting that Article 55, UCMJ, intended to provide even greater protections than the Eighth Amendment (quoting United States v. Wappler, 2 C.M.A. 393, 396, 9 C.M.R. 23, 26 (1953))).

To support his claim that the conditions of his confinement violated the Eighth Amendment, Lovett must show:  (1) an objectively, sufficiently serious act or omission resulting in the denial of necessities[11]; (2) a culpable state of mind on the part of prison officials amounting to deliberate indifference to Lovett's health and safety[12]; and (3) that he "has exhausted the prisoner-grievance system . . . and that he has petitioned for relief under Article 138, UCMJ, 10 USC § 938 [2000]."[13]

Assuming, without deciding, that the conditions of Lovett's confinement were as he has claimed them to be and that he exhausted his grievance system remedies, we conclude that he has not sustained his burden of establishing deliberate indifference to his health and safety.  Lovett's burden to show deliberate

---

[11] Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991); Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).

[12] Farmer, 511 U.S. at 834 (quoting Wilson, 501 U.S. at 302-03).

[13] United States v. Miller, 46 M.J. 248, 250 (C.A.A.F. 1997) (quoting United States v. Coffey, 38 M.J. 290, 291 (C.M.A. 1993)) (internal quotation marks omitted).

indifference requires him to show that "official[s] [knew] of and disregard[ed] an excessive risk to inmate health or safety; the official[s] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." Farmer, 511 U.S. at 837. We will not speculate about what prison officials knew of the specific conditions of Lovett's confinement or what conclusion they might have drawn. The burden to make that showing rested upon Lovett. He has only indicated that he made unspecified complaints to various officials or agencies and that he observed no change or got no response. In the absence of evidence showing what the officials knew and that they disregarded known risks to inmate safety, Lovett has failed to demonstrate that prison officials were deliberately indifferent to any conditions that might have violated the Eighth Amendment.[14] He has, therefore, failed to establish his Eighth Amendment claim.[15]

---

[14] In taking Lovett's assertions as true, we did not consider the effect of the American Correctional Association Visiting Committee Report for the USDB dated December 9, 1999 (ACA Report), submitted by Lovett. While the ACA Report does reflect noncompliance with ten of 424 applicable nonmandatory standards, it also conveys a generally positive evaluation of the facility and specifically reflects: 100% compliance with forty-one mandatory standards; an acceptable agency response (building a new USDB) to all ten findings of noncompliance with nonmandatory standards; that the staff had a "positive attitude and exhibited professionalism"; and that "[t]he overall security operation was excellent." Had we taken this submission from Lovett as true, as we did the claims in his declarations, the conflict between

DECISION

The decision of the United States Air Force Court of Criminal Appeals on further review is affirmed.

---

Lovett's own submissions would further enhance our conclusion that he has not met his burden of showing an Eighth Amendment violation in this case.

[15] In light of our conclusion that Lovett has failed to establish his Eighth Amendment claim, we need not address whether Lovett initiated or exhausted the prisoner grievance system and whether his failure to file an Article 138, UCMJ, 10 U.S.C. § 938 (2000), complaint is excused under the circumstances of this case.