# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

### No. ACM 39069

————————————

### UNITED STATES
*Appellee*

**v.**

### Harrison B. LINTHICUM
First Lieutenant (O-2), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 21 November 2017

————————————

*Military Judge:* Marvin W. Tubbs II.

*Approved sentence:* Dismissal and confinement for 5 months. Sentence adjudged 1 March 2016 by GCM convened at Keesler Air Force Base, Mississippi.

*For Appellant:* Captain Patrick A. Clary, USAF.

*For Appellee:* Lieutenant Colonel G. Matt Osborn, USAF; Major Mary Ellen Payne, USAF; Gerald R. Bruce, Esquire.

Before HARDING, SPERANZA, and DENNIS, *Appellate Military Judges*.

Judge SPERANZA delivered the opinion of the court, in which Senior Judge HARDING and Judge DENNIS joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

SPERANZA, Judge:

A military judge sitting as a general court-martial found Appellant guilty, consistent with his pleas pursuant to a pretrial agreement, of willful dereliction of duty for bringing an unregistered firearm onto base, wrongful use and

possession of oxycodone, and fraternization in violation of Articles 92, 112a, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 912a, 934. The military judge sentenced Appellant to a dismissal and confinement for five months. The convening authority approved the adjudged sentence.

On appeal, Appellant raises the following errors: (1) his command refused to intervene when he was denied access to prescribed care while passing kidney stones in post-trial confinement, and (2) he was denied effective assistance of counsel.[1] We find no prejudicial error and affirm.

## I. BACKGROUND

Appellant used oxycodone he purchased from a drug dealer. Investigators eventually apprehended Appellant on base, seizing a bag of oxycodone pills and an unregistered firearm from his vehicle. Urinalysis tests confirmed Appellant's oxycodone abuse. The United States Army Criminal Investigation Laboratory confirmed the seized pills were oxycodone pills.

Appellant also fraternized with a reserve enlisted member, whom he later married.

## II. DISCUSSION

### A. Post-trial Confinement Conditions

Appellant was a nurse practitioner who suffered from kidney stones among other ailments that are discussed later. Appellant served his confinement in a civilian jail. Members of Appellant's unit visited Appellant at the jail and monitored his well-being. Air Force confinement officials also monitored Appellant's confinement conditions and well-being. Appellant maintained access to his previously prescribed medications while in confinement.

Approximately one month into his term of confinement, Appellant passed kidney stones. He received medical attention and treatment upon request.

After approximately another month, Appellant, still in confinement, began passing more kidney stones. Appellant notified the corrections officer. When Appellant's condition worsened, the jail medical professionals responded by transporting Appellant to a local hospital where doctors determined Appellant suffered from passable kidney stones that did not require further medical attention. Appellant was returned to the jail to pass the kidney stones with the help of newly prescribed medications—a pain reliever and

---

[1] Raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

medicine to dilate his urethra. The jail promptly informed Air Force confinement officials of Appellant's medical condition and the jail's response. In turn, the military confinement officials consulted on-base medical professionals who confirmed Appellant received appropriate care.

Upon returning to the civilian jail, Appellant remained in medical hold for one day, then returned to his cell. Appellant passed his kidney stones over the following three days. Members of Appellant's unit visited Appellant within a few days after Appellant passed the kidney stones. Appellant claimed that he was "better," but did not receive his medications in a timely manner. Medication logs indicated Appellant received his medications in accordance with medical instructions.

In his clemency submissions to the convening authority, Appellant maintained that the lack of "proper treatment for his pain and kidney stone" justified, in part, relief. The convening authority waived mandatory forfeitures for the benefit of Appellant's dependents, but declined to grant Appellant further clemency.

Although Appellant lodged no formal complaints with civilian or military authorities, he now asks us to set aside his dismissal, arguing that he was "denied access to prescribed medication while experiencing a painful medical emergency,"[2] in violation of the Eighth Amendment[3] and Article 55, UCMJ, 10 U.S.C. § 855. Appellant alternatively demands we set aside his dismissal pursuant to our authority under Article 66(c), UCMJ, in order to "send a clear message regarding the significance of [the Government's] responsibility [to respond to medical requests], and . . . to ensure similar indifference does not happen in the future."

The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishment."[4]

Article 55, UCMJ, likewise prohibits cruel and unusual punishments, providing:

> Punishment by flogging, or by branding, marking, or tattooing on the body, or any other cruel or unusual punishment, may

---

[2] Although neither party requested additional fact-finding, we nonetheless applied the principles announced in *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997), to the entire record of Appellant's trial and concluded we could resolve this issue without additional fact-finding.

[3] U.S. CONST. amend. VIII.

[4] *Id.*

> not be adjudged by a court-martial or inflicted upon any person subject to this chapter. The use of irons, single or double, except for the purpose of safe custody, is prohibited.

10 U.S.C. § 855.

> In general, we apply the Supreme Court's interpretation of the Eighth Amendment to claims raised under Article 55, UCMJ, except where legislative intent to provide greater protections under Article 55, UCMJ, is apparent. *United States v. Avila*, 53 M.J. 99, 101 (C.A.A.F. 2000) (citing *United States v. Wappler*, 2 C.M.A. 393, 9 C.M.R. 23, 26 (C.M.A. 1953)).

*United States v. Gay*, 74 M.J. 736, 740 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016).

"[T]he Eighth Amendment prohibits two types of punishments: (1) those incompatible with the evolving standards of decency that mark the progress of a maturing society or (2) those which involve the unnecessary and wanton infliction of pain." *Id.* (citing *United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006)) (internal quotation marks omitted).

> A violation of the Eighth Amendment is shown by demonstrating: "(1) an objectively, sufficiently serious act or omission resulting in the denial of necessities; (2) a culpable state of mind on the part of prison officials amounting to deliberate indifference to [the appellant's] health and safety; and (3) that [the appellant] has exhausted the prisoner-grievance system . . . and that he has petitioned for relief under Article 138, UCMJ."

*Id.* (citing *Lovett*, 63 M.J. at 215) (alteration in original) (footnotes omitted) (internal quotation marks omitted).

Under Article 66(c), UCMJ, we "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as we find correct in law and fact and determine, on the basis of the entire record, should be approved." 10 U.S.C. § 866(c). In *United States v. Gay*, a panel of this court invoked Article 66(c) to grant the appellant sentencing relief even in the absence of cruel or unusual punishment in violation of the Eighth Amendment and Article 55, UCMJ. *Gay*, 74 M.J. at 743. On review, the Court of Appeals for the Armed Forces (CAAF) held that this court did not abuse its discretion in doing so. *United States v. Gay*, 75 M.J. 264, 269 (C.A.A.F. 2016). However, the CAAF noted that *Gay* involved unique facts driven by legal errors in the post-trial process that included both a violation of the appellant's rights under Article 12, UCMJ, 10 U.S.C. § 812, and the ordering of solitary confinement by an Air Force official where an alternative solution was available. *Id.*

Significantly, the CAAF emphasized, "[i]n reaching this conclusion, we do not recognize unlimited authority of the Courts of Criminal Appeals to grant sentence appropriateness relief for any conditions of post-trial confinement of which they disapprove." *Id.* Accordingly, "[o]nly in very rare circumstances do we anticipate granting sentence relief when there is no violation of the Eighth Amendment or Article 55, UCMJ." *United States v. Ferrando*, ___ M.J. ___, No. ACM 39039, 2017 CCA LEXIS 655, at *30 (A.F. Ct. Crim. App. 16 Oct. 2017).

As an initial matter, we note that kidney stones—not prison officials using irons, flogging, branding, marking, tattooing, *or any other cruel or unusual punishment*—inflicted the pain Appellant undeniably suffered in confinement. Prison officials, to include medical professionals, responded to and treated Appellant's medical condition. Although Appellant is dissatisfied with the level of care he received, we cannot say the medical treatment he received was "incompatible with the evolving standards of decency that mark the progress of a maturing society." *Lovett*, 63 M.J. at 215. Moreover, prison officials responding to Appellant's passing of kidney stones did not do so with a culpable state of mind amounting to deliberate indifference to his health and safety. *See id.* To the contrary, Appellant received medical care upon request; albeit not to his subjective standard of care. Finally and importantly, Appellant's case does not present evidence to suggest he *exhausted* administrative avenues to address his complaint.

The CAAF emphasized, "A prisoner must seek administrative relief prior to invoking judicial intervention to redress concerns regarding post-trial confinement conditions." *United States v. Wise*, 64 M.J. 468, 469 (C.A.A.F. 2007). This requirement "promot[es] resolution of grievances at the lowest possible level [and ensures] that an adequate record has been developed [to aid appellate review]." *Id.* at 471 (quoting *United States v. Miller*, 46 M.J. 248, 250 (C.A.A.F. 1997)) (alteration in original). An appellant must show that "absent some unusual or egregious circumstance . . . he has exhausted the prisoner-grievance system [in his detention facility] *and* that he has petitioned for relief under Article 138." *Id.* (quoting *United States v. White*, 54 M.J. 469, 472 (C.A.A.F. 2001)) (alteration in original) (emphasis added). Appellant failed to make such a showing. While Appellant's complaint to the convening authority during clemency could be viewed as a de facto Article 138, UCMJ, complaint, Appellant did not utilize, much less exhaust, the civilian jail's grievance system in order to remedy his perceived mistreatment. *See Wise,* 64 M.J. at 470 ("Exhaustion requires Appellant to demonstrate that two paths of redress have been attempted, each without satisfactory result.); *cf. United States v. Towns*, 52 M.J. 830, 834 (A.F. Ct. Crim. App. 2000). Simply put, Appellant was not subjected to cruel or unusual punishment.

Nonetheless, we currently consider whether or not Appellant's claims warrant sentence relief under Article 66(c). *See generally*, *Gay*, 74 M.J. 736. Appellant's complaint can be summarized like this—his unit's "indifference" caused him to needlessly suffer kidney stone pain because his unit failed to intervene on his behalf when he did not receive the type of medical care he believed he should. In assessing Appellant's complaint, we begin by again noting that he failed to utilize, let alone exhaust, his confinement facility's grievance system. However, Appellant's unit (medical professionals) and Air Force confinement officials were aware of Appellant's condition and his treatment. Appellant was not being denied medical care. He maintained access to all of his prescribed medications and records indicate he was provided these medications. Military officials determined Appellant was receiving appropriate care for his condition while in confinement. Thus, we decline Appellant's invitations to resolve differences of opinion regarding his medical care or to decide what he presumably proclaims to be medical malpractice. In so doing, we emphasize that "[w]hile we have granted sentence relief based upon conditions of post-trial confinement where a legal deficiency existed, we are not a clearing house for post-trial confinement complaints or grievances." *Ferrando*, 2017 CCA LEXIS 655, at *30. Plainly, Appellant's assertions do not warrant the extraordinary use of our Article 66(c) power to grant sentence relief.[5]

## B. Effectiveness of Counsel

During his service, Appellant suffered from neck, back, and other pain that required surgery. Prior to trial, Appellant was also battling his ex-wife for custody of their daughter.

Defense counsel advised Appellant, *inter alia*, about the consequences of a dismissal on his ability to receive medical benefits. In addition to the loss of potential benefits, Appellant remained concerned that lengthy confinement would impact his child custody case.

Less than two months after arraignment and approximately one week before trial, Appellant signed a pretrial agreement offer in which he certified

---

[5] Although not raised in his assignments of error, Appellant complained of several other post-trial confinement conditions in a declaration. We considered these conditions and find that they do not amount to cruel or unusual punishment in violation of the Eighth Amendment or Article 55, UCMJ. We also find that none of those other conditions warrant the extraordinary use of our Article 66(c), UCMJ, power to grant sentence relief.

that he was satisfied with his defense counsel and considered them competent to represent him. In this offer, Appellant also asserted the following:

> My defense counsel fully advised me of the nature of the charges and specifications against me, the possibility of my defending against them, any defenses that might apply, and the effect of the guilty plea that I am offering to make, and I fully understand their advice and the meaning, effect, and consequences of this plea.

Per the terms of the pretrial agreement, the convening authority agreed not to approve any confinement in excess of six months. However, as trial approached, Appellant's concerns focused on his child custody case. Thus, Appellant sought to further limit the amount of confinement that could be adjudged. On the day before trial, Appellant asked his defense counsel if requesting a dismissal in his unsworn statement would decrease the amount of adjudged confinement. Appellant's defense counsel advised him that the military judge would appropriately consider such a request, but reminded Appellant of a punitive discharge's impact on any potential medical benefits. The morning of trial, Appellant informed his defense counsel that he was going to request a dismissal in the hope of reducing any adjudged confinement. Accordingly, Appellant's defense counsel reduced their advice—and Appellant's decision to request a dismissal against their advice—to writing.

Appellant and both defense counsel signed a memorandum prior to trial. The memorandum included a paragraph titled "Veteran's Benefits." This paragraph advised Appellant the following:

> If you are sentenced to a dismissal as part of your punishment in a Court-Martial, your veteran's benefits may be limited or lost entirely. It is your choice whether to request a dismissal as part of your sentence and you are not required to request or not request a dismissal it [sic] at all. Knowing this, you have chosen to request a dismissal as part of your oral unsworn statement.

Appellant initialed a paragraph summarizing his decision as follows: "I have been fully advised as to the repercussions of a dismissal at a Court-Martial on my VA benefits and freely choose to request a dismissal as part of my unsworn statement against the recommendation of my attorneys." Appellant also certified that he "read and discussed the above rights and issue with [his] attorneys."

At sentencing, the military judge admitted, as a defense exhibit, a written unsworn statement from Appellant in which Appellant asserted the following: "I am currently in the process of a Medical Evaluation Board for my back

and neck and the ongoing pain. If I am dismissed from the service with a punitive dismissal [sic], I will lose any chance at any VA benefits to help me with my back and neck."

After the military judge admitted all of the offered defense exhibits, Appellant's counsel asked the military judge to read Appellant's written unsworn statement before Appellant provided an oral unsworn statement "to put in context what [Appellant will] say while he's giving his oral unsworn statement." The military judge examined the written unsworn statement and allowed Appellant to proceed with an oral unsworn statement. In his oral unsworn statement, Appellant claimed the following: "Although I do not want to lose the potential to receive VA benefits for my injuries, I would rather receive a dismissal and no jail time to avoid losing custody of my kids, and the progress that I have made in my recovery. Their future depends on it."

Appellant's request for a dismissal in lieu of "jail time" caused the military judge to engage Appellant in the following inquiry after the defense rested its sentencing case:

> [MJ] Do you understand that the only discharge this court could adjudge is a dismissal?
>
> ACC: Yes, sir.
>
> MJ: Do you understand that a dismissal would forever adversely stigmatize the character of your military service and it will limit your future employment and schooling opportunities?
>
> ACC: Yes, sir.
>
> MJ: Do you understand that a dismissal may adversely affect your future with regard to legal rights, economic opportunities, and social acceptability?
>
> ACC: Yes, sir.
>
> MJ: Do you understand that by being dismissed you will lose substantially all benefits from the Department of Veterans Affairs [(VA)], as well as the Air Force establishment, as well as other benefits normally given by other government agencies?
>
> ACC: Yes, sir.
>
> MJ: Have you thoroughly discussed these desires with your defense counsel?
>
> ACC: Yes, sir.
>
> MJ: Do you believe you fully understand the ramifications of a dismissal?

ACC: Yes, sir.

MJ: Are you aware that if you do not receive a dismissal, then your chain-of-command may very well try to administratively separate you from the service?

ACC: Yes, sir.

MJ: Are you aware that an administrative separation is considered much less severe than a dismissal from a court-martial and will not stigmatize you with the devastating and long-term effects of a dismissal from a court-martial?

ACC: Yes, sir.

MJ: Knowing all that and what your defense counsel has explained to you, you did express a preference for a dismissal to lengthy jail time?

ACC: Yes, sir.

MJ: And you did express that knowing all of those things I just discussed with you and what your defense counsel has discussed with you?

ACC: Yes, sir.

After trial, Appellant declared that his "medical case was referred to [medical evaluation board]" and he was notified he "received a disability rating of one-hundred percent with the VA."

On appeal, Appellant incredibly claims that "[h]ad [he] known that [he] would be eligible for a medical retirement and VA disability benefits, [he] would have never requested a dismissal from the military judge." He attributes his decision to "incorrect advice" he received from his counsel, who he now contends told him that he "could not be medically retired because [his] resignation-in-lieu-of court-martial and medical retirement had been denied."

In response to Appellant's claim, we ordered and received declarations from Appellant's defense counsel. Defense counsel's declarations addressed the specific allegations raised by Appellant and included the memorandum initialed and signed by Appellant.

The Sixth Amendment guarantees Appellant the right to effective assistance of counsel. *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001). In assessing the effectiveness of counsel, we apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Accordingly, "an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice."

*United States v. Green*, 68 M.J. 360, 361 (C.A.A.F. 2010) (citing *Strickland*, 466 U.S. at 687). "The *Strickland* test applies in the context of guilty pleas where an appellant challenges the plea based on ineffective assistance of counsel." *United States v. Rose*, 71 M.J. 138, 143 (C.A.A.F. 2012) (citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)).

In determining whether counsel's performance was deficient, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Appellant must therefore establish that counsel's "representation amounted to incompetence under 'prevailing professional norms.'" *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690).

To prevail on his ineffective assistance of counsel claim, Appellant must also establish that he was prejudiced. *Rose*, 71 M.J. at 144. In the context of a guilty plea, the prejudice question is whether "there is a reasonable probability, but for counsel's errors, [Appellant] would not have pleaded guilty and would have insisted on going to trial." *Id.* (quoting *Hill*, 474 U.S. at 59).

We review allegations of ineffective assistance of counsel de novo. *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (citing *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009)).

The record in Appellant's case, to include his defense counsels' declarations and the memorandum he signed and initialed, refutes Appellant's ineffective assistance of counsel allegations.[6] Defense counsel's explanations and actions in this case were reasonable, and their level of advocacy was at or above the performance ordinarily expected of fallible lawyers. *See Gooch*, 69 M.J. at 362. Accordingly, we find that defense counsel competently represented Appellant. Appellant's defense counsel were presumed to be competent and Appellant failed to overcome that presumption. Moreover, Appellant failed to establish prejudice, as we find no reasonable probability—given the record of this case and Appellant's specious allegation of ineffective assistance of counsel—that Appellant would have pleaded not guilty and insisted on going to trial. Appellant has not demonstrated (1) that his defense counsels' performances were deficient and (2) that any deficiency resulted in prejudice. Consequently, Appellant's ineffective assistance of counsel claim is without merit.

---

[6] Having applied the principles announced in *Ginn*, 47 M.J. at 248, and considered the entire record of Appellant's trial, a guilty plea during which he expressed his satisfaction with trial defense counsel, we find we can resolve Appellant's ineffective assistance of counsel claim without additional fact-finding.

## III. CONCLUSION

The findings of guilt and the sentence are correct in law and fact and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

KATHLEEN M. POTTER
Acting Clerk of the Court