# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39303**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Andrew J. BARNES**
Airman First Class (E-3), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 29 August 2018

———————————

*Military Judge:* L. Martin Powell.

*Approved sentence:* Dishonorable discharge, confinement for 52 months, and reduction to E-1. Sentence adjudged 30 March 2017 by GCM convened at Joint Base Andrews, Maryland.

*For Appellant:* Captain Mark J. Schwartz, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Major J. Ronald Steelman III, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, DENNIS, and LEWIS, *Appellate Military Judges*.

Senior Judge JOHNSON delivered the opinion of the court, in which Judge DENNIS and Judge LEWIS joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

———————————

JOHNSON, Senior Judge:

Appellant, contrary to his pleas, was found guilty by a military judge sitting as a general court-martial of three specifications of aggravated assault with a means or force likely to produce death or grievous bodily harm in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §

928. The military judge sentenced Appellant to a dishonorable discharge, confinement for 52 months, and reduction to the grade of E-1. The convening authority approved the adjudged sentence but deferred the reduction in rank and mandatory forfeiture of pay and allowances until action and then waived the mandatory forfeitures for six months for the benefit of Appellant's spouse and dependent child.

Appellant raises three issues on appeal: (1) whether his sentence is inappropriately severe; (2) whether his convictions for aggravated assault with a means or force likely to produce death or grievous bodily harm are factually sufficient; and (3) whether Appellant was subjected to cruel and unusual post-trial punishment in violation of the Eighth Amendment[1] and Article 55, UCMJ, 10 U.S.C. § 855.[2] We find no relief is warranted and we affirm the findings and sentence.

## I. BACKGROUND

In January 2016, Appellant was stationed at Joint Base Andrews, Maryland, where he lived on base with his wife SB and infant daughter EB. On 25 January 2016, SB prepared a bath for EB, who was approximately seven weeks old at the time, while Appellant stayed with EB in an adjoining room. EB began crying before the bath and would not stop. During the bath, Appellant and SB noticed EB's leg was swollen. Appellant touched EB's leg and "felt something was wrong." Appellant and SB took EB to the on-base emergency room. An x-ray revealed EB's femur was severely fractured—in fact, completely broken in two. The x-ray also indicated the possible presence of other fractures. EB was taken by ambulance to Walter Reed National Military Medical Center (Walter Reed), which was better equipped to deal with severe pediatric fractures.

Subsequent evaluation revealed that in addition to the broken femur, EB had a recently-fractured scapula and had previously suffered multiple posterior rib fractures that had been healing for some time. When questioned by medical providers at Joint Base Andrews and Walter Reed, Appellant speculated that EB's leg may have broken when it struck his leg or a table as he flipped her over prior to the bath. Appellant further speculated the rib injuries may have been caused on an occasion when he rolled on top of EB as he was sleeping or by the family's dogs jumping on EB. The providers found

---

[1] U.S. CONST. amend. VIII.

[2] Appellant personally raises all three of these issues pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

these explanations unconvincing. At trial, Captain (CAPT) AG, United States Navy (USN), a child abuse pediatrician assigned to Walter Reed, testified for the Government as an expert witness in child abuse pediatrics that leg fractures, scapula fractures, multiple rib fractures, and the presence of multiple fractures in general in such a young child were all highly-specific indicators of child abuse.

Appellant was interviewed by agents of the Air Force Office of Special Investigations (AFOSI). Appellant admitted he had not been "a hundred percent truthful with the doctors" or SB. Appellant agreed it was hard to believe EB's broken leg could have been caused by her leg striking his leg as he flipped her over. He described roughly handling EB in additional ways, including squeezing her torso as he tossed her in the air to play with her; grabbing her and forcefully squeezing her by the legs; and falling on her leg with his knee. Appellant admitted that on 25 January 2016 he was "frustrated" and "took it out" on EB by flipping her over roughly before the bath. He stated that on another occasion he squeezed EB's legs with enough force to break her bones, although he did not intend to break them. Appellant admitted that he "hurt [his] own baby" and that his "body just does it" and he does not "think." He further admitted that before EB was born he had been worried about hurting the baby because he acts "on impulse" when he is frustrated and that he "still need[ed] help."

At trial, Appellant was charged with, *inter alia*, three specifications of aggravated assault intentionally inflicting grievous bodily harm on a child, to wit: a proximal transverse left femur fracture, multiple posterior rib fractures, and a left scapula fracture, in violation of Article 128, UCMJ. With respect to these three specifications, Appellant pleaded not guilty to the offenses charged but guilty to the lesser included offenses of assault consummated by a battery on a child in violation of Article 128, UCMJ.[3] The trial proceeded as to the charged offenses. The military judge found Appellant not guilty of intentionally inflicting grievous bodily harm, but guilty of three specifications of the lesser included offenses of aggravated assault with a means or force likely to produce death or grievous bodily harm, also in violation of Article 128, UCMJ.[4]

---

[3] Appellant pleaded guilty by exceptions and substitutions as to the mechanism of injury involved in the specification alleging the scapula fracture, admitting to subjecting EB's "shoulder to unlawful force" rather than subjecting her "torso to blunt force trauma."

[4] With respect to the scapula fracture, the military judge made findings by exceptions and substitutions using language that mirrored Appellant's guilty plea. The military

*(Footnote continues on next page)*

## II. DISCUSSION

### A. Sentence Appropriateness

#### 1. Law

We review issues of sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (citing *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990)). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(c), UCMJ. "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (citing *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009)). Although we have great discretion to determine whether a sentence is appropriate, we have no authority to grant mercy. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

#### 2. Analysis

Appellant bases his claim that his sentence is inappropriately severe in part on his review of "numerous cases similar to [his]," of which "a large number . . . received a lesser punishment." However, Appellant provides a citation only for *United States v. Wiglitton*, 2016 CCA LEXIS 376 (A. Ct. Crim. App. 13 Jun. 2016), *recon. granted*, *United States v. Wiglitton*, 2016 CCA LEXIS 567 (A. Ct. Crim. App. 19 Sep. 2016). In *Wiglitton*, the accused pleaded guilty to two specifications of aggravated assault on a child and one specification of assault consummated by a battery on a child in violation of Article 128, UCMJ, and two specifications of child endangerment by culpable negligence in violation of Article 134, UCMJ.[5] The accused's approved sentence included a bad-conduct discharge, confinement for 30 months, and reduction to the grade of E-1. Appellant requests his dishonorable discharge be modified to a bad-conduct discharge and his term of confinement be reduced to 30 months.

---

judge found Appellant not guilty, in accordance with his pleas, of an additional specification of aggravated assault intentionally inflicting grievous bodily harm on a child. A fifth specification of aggravated assault intentionally inflicting grievous bodily harm on a child was withdrawn and dismissed.

[5] On reconsideration, our sister court set aside and dismissed one of the specifications of aggravated assault on a child and reassessed and affirmed the approved sentence. *Wiglitton*, 2016 CCA LEXIS 567, at *5–6.

Although *Wiglitton* is not "closely related" to Appellant's case,[6] we acknowledge that we may compare the cases to consider the propriety of Appellant's sentence, although we are not required to do so. *See United States v. Wacha*, 55 M.J. 266, 267 (C.A.A.F. 2001); *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999). However, unless the cases are closely related, "[t]he appropriateness of a sentence generally should be determined without reference or comparison to sentences in other cases." *United States v. LeBlanc*, 74 M.J. 650, 659 (A.F. Ct. Crim. App. 2015) (en banc) (citing *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985)). We do not find Appellant's reference to *Wiglitton* persuasive; rather, it illustrates the wisdom of this court's admonition in *LeBlanc* that sentence comparisons in non-closely-related cases are generally to be avoided. Apart from the fact that Specialist Wiglitton, unlike Appellant, pleaded guilty to the offenses of which he was convicted, and the fact that the Army Court of Criminal Appeals set aside one of the aggravated assault convictions, the opinions in that case give few details as to the particular circumstances of the case that drive a sentence appropriateness determination. *See Sauk*, 74 M.J. at 606.

As for the particular circumstances of Appellant's case, he repeatedly inflicted grievous bodily harm on his infant daughter EB by breaking her leg, multiple ribs, and scapula. CAPT AG testified that EB's bones would not break easily and these injuries would have required a "significant amount of force." Appellant emphasizes the impact his incarceration has had on his family, his desire to be reunited with them, and his participation in rehabilitation programs and counseling before his trial. However, these points that Appellant urges do not render the imposed sentence inappropriately severe, and this court has no authority to engage in clemency. *Nerad*, 69 M.J. at 146. Having given individualized consideration to Appellant, the nature and seriousness of the offenses, Appellant's record of service, and all other matters contained in the record of trial, we cannot say the sentence imposed by the military judge is inappropriately severe.

## B. Factual Sufficiency

### 1. Law

We review issues of factual sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F.

---

[6] Cases are "closely related" when, for example, they involve "coactors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers whose sentences are sought to be compared." *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999).

2002). Our assessment of factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987); *see also United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

The elements of the offense of aggravated assault with a means or force likely to produce death or grievous bodily harm in violation of Article 128, UCMJ, of which Appellant was convicted include: (1) that Appellant did bodily harm to EB; (2) that he did so with a certain means or force; (3) that the bodily harm was done with unlawful force or violence; and (4) that the means or force was used in a manner likely to produce death or grievous bodily harm. *See Manual for Courts-Martial, United States* (2016 ed.) *(MCM)*, pt. IV, ¶ 54b(4). "Grievous bodily harm" means serious bodily injury and includes fractured or dislocated bones. *MCM*, pt. IV, ¶ 54c(4)(a)(iii).

**2. Analysis**

With respect to the factual sufficiency of his convictions, Appellant simply contends he "never meant to intentionally hurt [his] daughter" and asks us to find him guilty only of the offenses to which he pleaded guilty. We are not persuaded.

The Government introduced compelling evidence through the testimony of four doctors with knowledge of the case and through radiological images that EB suffered a broken femur, multiple posterior rib fractures, and a fractured scapula. These injuries, individually and collectively in an infant too young to crawl, much less walk, were highly-specific indicators of child abuse. The medical evidence and Appellant's guilty plea colloquy with the military judge indicated these injuries were inflicted on three separate occasions.

Moreover, these injuries required the application of a significant amount of force. EB's femur was snapped in two. The doctors who testified generally agreed that Appellant's description of how this injury occurred—that he roughly flipped EB onto her back before her bath by pulling her leg—would

not cause such an injury; more force than Appellant admitted to would be required.[7] Appellant told the military judge he believed EB, then six weeks old, suffered the broken ribs in mid-January 2016 when Appellant squeezed EB's torso with both hands in frustration because she would not stop crying. CAPT AG testified this was exactly the means by which such posterior fractures to the ribs could occur, and it stands to reason an adult male who squeezes a six-week-old infant in such a way is likely to inflict grievous bodily harm such as broken ribs. As for the fractured scapula, Appellant told the military judge that, on a separate occasion before EB suffered the broken femur, Appellant lifted EB off the couch quickly by her hands and tossed her into the air before catching her; he believed this is when EB's scapula was broken. However, CAPT AG testified that such a scapula injury was "very rare" with an "extreme high specificity for abuse in children," and that there is no common accidental mechanism for such an injury, which generally requires "blunt force trauma directly to the scapula."

At trial, the Defense introduced the testimony of Dr. SG, who testified as an expert medical doctor and radiologist. *Inter alia*, Dr. SG opined that images of EB's bones taken around the time her femur was broken contained indications that EB may have temporarily suffered from rickets, a rare condition that results in weakened bones in children. However, in their initial testimony and again in rebuttal, CAPT AG and EB's attending pediatric radiologist, Commander KF (USN), rejected this notion. They specifically and effectively explained why no diagnosis of rickets or other bone-compromising condition was warranted based on a multi-disciplinary evaluation by EB's team of providers, and Appellant does not now rely on Dr. SG's testimony to attack the factual sufficiency of his convictions.

Instead, Appellant continues to maintain he did not intentionally break EB's bones. However, *intentionally* inflicting grievous bodily harm is the offense of which he was acquitted. The record convincingly demonstrates Appellant repeatedly assaulted EB in a manner likely to cause death or grievous bodily harm, as indeed he did. Having weighed the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are convinced of Appellant's guilt beyond a reasonable doubt. *See Turner*, 25 M.J. at 325.

---

[7] At one point during the AFOSI interview Appellant suggested for the first time that he may have fallen on EB's leg with his knee on 25 January 2016. However, Appellant did not refer to such an event during his colloquy with the military judge.

## C. Post-Trial Confinement Conditions

### 1. Law

"Both the Eighth Amendment and Article 55, UCMJ, prohibit cruel and unusual punishment. In general, we apply the Supreme Court's interpretation of the Eighth Amendment to claims raised under Article 55, UCMJ, except where legislative intent to provide greater protections under Article 55 . . . is apparent." *United States v. Gay*, 74 M.J. 736, 740 (A.F. Ct. Crim. App. 2015) *aff'd*, 75 M.J. 264 (C.A.A.F. 2016) (citation omitted). To demonstrate a violation of the Eighth Amendment, an appellant must show:

> (1) an objectively, sufficiently serious act or omission resulting in the denial of necessities; (2) a culpable state of mind on the part of prison officials amounting to deliberate indifference to [his] health and safety; and (3) that [he] has exhausted the prisoner-grievance system . . . and that he has petitioned for relief under Article 138, UCMJ, 10 U.S.C. § 938.

*United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006) (internal quotation marks and citations omitted). Pursuant to our broad authority and mandate under Article 66(c), UCMJ, to approve only so much of the sentence as we find appropriate in law and fact, we may grant sentence relief due to an appellant's post-trial treatment even in the absence of an Eighth Amendment or Article 55, UCMJ, violation. *Gay*, 74 M.J. at 742–43; *see United States v. Tardif*, 57 M.J. 219, 223 (C.A.A.F. 2002).

### 2. Analysis

Appellant contends he was subjected to cruel and unusual punishment during the 11 days he spent in the Prince George's County (Maryland) Detention Center (PGCDC) immediately following his trial before his transfer to a military confinement facility. Specifically, he asserts the toilet in his cell was clogged for the first three days of his confinement before it was repaired; the floor of the cell appeared stained with urine and the walls appeared "covered in vomit, blood, and urine stains;" he was provided two sets of clothing but not permitted to wash them; he was not allowed out of his cell for an hour each day as he was supposed to be; on one occasion when his cell was searched he was awakened and "forced out of bed" while his arm was in a sling following shoulder surgery; he was deprived of medication for depression for the first four days; and he was not afforded opportunities to call his attorney. Affidavits from Appellant's spouse SB and his first sergeant that were provided to the convening authority as part of Appellant's clemency submission contained many of these same complaints. Their affidavits also suggested that the PGCDC counted the time he spent receiving their visits towards the one hour a day he was allotted outside his cell, and that on one

day Appellant declined the hour because he was sleeping. SB and the first sergeant complained to the PGCDC staff, which apparently resulted in Appellant receiving an additional hour of recreation time on one occasion. Appellant also asserts he was "refused medical attention," but fails to provide any further details or articulate any specific harm as a result of this alleged denial or any of the other conditions of which he complains.

In response, the Government provided a declaration from Staff Sergeant (SSgt) JG, the Air Force's Noncommissioned Officer in Charge of Confinement for the National Capital Region. SSgt JG stated, *inter alia*, there was no record from the PGCDC that Appellant filed any grievance or work order regarding his toilet or the other conditions of his cell. SSgt JG further stated that the PGCDC staff related to him that Appellant used part of his one-hour recreation time to shower and make phone calls, which limited the time available for other activity.

To the extent there are contradictions between Appellant's declaration and SSgt JG's declaration, we have considered whether a post-trial evidentiary hearing is required to resolve factual disputes. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997); *United States v. DuBay*, 37 C.M.R. 411, 413 (C.M.A. 1967). We are convinced such a hearing is unnecessary. Even if we resolve any contradictions in Appellant's favor, the alleged conditions would not result in relief. *See Ginn*, 47 M.J. at 248.

We do not doubt Appellant was subjected to highly unpleasant conditions at the PGCDC. However, the standard for securing relief for cruel and unusual punishment our superior court articulated in *Lovett* is a demanding one. On the record before us, Appellant has failed to demonstrate either "an objectively, sufficiently serious act or omission resulting in the denial of necessities" or "a culpable state of mind on the part of prison officials amounting to deliberate indifference to [his] health and safety." *Lovett*, 63 M.J. at 215. Furthermore, Appellant has failed to demonstrate he filed a complaint pursuant to Article 138, UCMJ, or used the prisoner grievance system in place at the PGCDC. *Id.*

In addition, we have considered whether the conditions of Appellant's confinement warrant sentence relief under our Article 66(c), UCMJ, authority even in the absence of cruel or unusual punishment. *See Gay*, 74 M.J. at 742–43. We find they do not.

### III. Conclusion

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred.

Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court