# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39594**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Dylan R. CINK**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 12 June 2020

————————————

*Military Judge:* Christopher M. Schumann.

*Approved sentence:* Dishonorable discharge, confinement for 6 years, forfeiture of all pay and allowances, and reduction to E-1. Sentence adjudged 14 September 2018 by GCM convened at Kirtland Air Force Base, New Mexico.

*For Appellant:* Captain M. Dedra Campbell, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Major Anne M. Delmare, USAF; Mary Ellen Payne, Esquire.

Before J. JOHNSON, POSCH, and KEY, *Appellate Military Judges.*

Chief Judge J. JOHNSON delivered the opinion of the court, in which Judge POSCH joined. Judge KEY filed a separate opinion concurring in part and in the result.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

J. JOHNSON, Chief Judge:

A general court-martial composed of a military judge alone convicted Appellant, in accordance with his pleas pursuant to a pretrial agreement (PTA),

of one specification of involuntary manslaughter in violation of Article 119, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 919.[1] The military judge sentenced Appellant to a dishonorable discharge, confinement for eight years, forfeiture of all pay and allowances, and reduction to the grade of E-1. In accordance with the terms of the PTA, the convening authority approved confinement for only six years, in addition to the dishonorable discharge, forfeitures, and reduction.

Appellant raises three issues on appeal: (1) whether the military judge erred by considering unsworn statements written by the victim's grandchildren pursuant to Rule for Courts-Martial (R.C.M.) 1001A because they were not offered by the grandchildren themselves or through a designee, and because the grandchildren did not qualify as "victims" for purposes of the rule; (2) whether Appellant is entitled to relief due to the conditions of his post-trial confinement; and (3) whether Appellant is entitled to a new post-trial process because the Government failed to serve him with a copy of the record of trial.[2] We find no error that substantially prejudiced Appellant's material rights, and we affirm the findings and sentence.

## I. BACKGROUND

On the afternoon of 18 June 2016, Appellant drove his brother and a friend in Appellant's pickup truck from his hometown of Palacios, Texas, to a beach approximately 40 miles away. There the trio drank alcohol and barbequed. Appellant later stated he drank between 10 and 12 beers over the course of about four hours. At around 1800, Appellant received a call to return for a family dinner to celebrate the Father's Day weekend. Appellant and the others packed their belongings, and Appellant began driving back to Palacios.

At approximately 1855, Appellant approached an intersection with a clearly visible stop sign. Appellant failed to stop and collided with a sport utility vehicle (SUV) traveling on the intersecting road. A witness in another vehicle with a clear view estimated Appellant was traveling 55 miles per hour and did not slow down at all before entering the intersection.

There were four occupants in the SUV: DA, the driver; her mother LAR, in the front passenger seat; and two of DA's children, 7-year-old PA and 13-year-old EA, in the back seat. LAR died at the scene from blunt force injuries to her

---

[1] All references in this opinion to the Uniform Code of Military Justice, Military Rules of Evidence, and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2016 ed.).

[2] Appellant personally raises issue (3) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

torso. She was 68 years old. PA suffered a fractured hip; EA suffered a broken collarbone; and DA suffered a broken tailbone and "disfigur[ing]" bruises on her leg. Although Appellant's truck flipped over from the collision, none of its occupants suffered substantial injuries. However, emergency responders transported Appellant to a hospital where his blood alcohol concentration (BAC) was measured at 0.282, or 282 milligrams of ethanol per deciliter. Texas law defined intoxication as a BAC of 0.080 or greater.

Pursuant to a PTA with the convening authority, Appellant pleaded guilty to a single charge and specification alleging the involuntary manslaughter of LAR.

## II. DISCUSSION

### A. R.C.M. 1001A

#### 1. Additional Background

The Government called DA and her spouse AA to testify as sentencing witnesses. AA testified, *inter alia*, that his mother-in-law LAR had been "a really good grandmother" who was "adored" by his ten children. He continued, "they loved her cooking and they loved spending time with her. . . . [A]nd she loved spending time with them." In response to further questioning, AA described how LAR's death had negatively affected his children in various ways.

Similarly, DA testified, *inter alia*, that her ten children—who ranged in age from 25 years to 9 years at the time of trial—"adored" LAR and would "get very excited" when she visited them. She testified LAR's death had been "hard for everyone. . . . [DA's children] still come to me and tell me how much they miss her. The holidays aren't the same anymore, there's always an emptiness. . . . [S]he was the center of our attention." DA also stated that some of her children had written letters that they wanted to be considered at Appellant's court-martial.

At the conclusion of the Government's sentencing case, senior trial counsel advised the military judge that multiple individuals who qualified as victims of the crime pursuant to Article 6b, UCMJ, 10 U.S.C. § 806b, wished to make unsworn statements to the court. These were consolidated in one 13-page document marked as Court Exhibit 1, which consisted of nine individual statements by DA and eight of her ten children—including PA, but not including EA. The statements described the negative emotional impact that LAR's death had on DA and her children. Senior trial counsel provided Court Exhibit 1 to the court reporter and copies to the military judge and trial defense counsel.

Senior defense counsel objected to Court Exhibit 1 on three bases. First, while conceding that DA and PA (and EA, although she did not provide a statement) qualified as victims for purposes of R.C.M. 1001A, senior defense counsel suggested it was "not clear" LAR's remaining grandchildren qualified as victims, and therefore the Defense objected to seven of the statements. Second, assuming these remaining grandchildren were victims for purposes of the rule, senior defense counsel argued the rule required that each statement be introduced by the individual victim, his or her designated representative, or the victim's counsel, if any.[3] Third, senior defense counsel argued the content of some of the statements exceeded their permissible scope under R.C.M. 1001A.[4] Although the Government conceded that some portions of unsworn statements might exceed the permitted scope, as to the broader issues it maintained that all of LAR's grandchildren who offered statements qualified as victims due to the emotional harm they suffered from her death, and that the proffered statements met the intent of R.C.M. 1001A because it was clear the victims knew about Appellant's trial and wanted these statements presented to the court.

In an oral ruling, the military judge agreed with the Government that all of the grandchildren who offered statements were victims for purposes of R.C.M. 1001A, in that they suffered direct emotional harm from LAR's death. He further found the "spirit and intent" of the procedural requirements of R.C.M. 1001A had been met. He noted trial counsel had affirmed the victims received timely, specific notice of Appellant's court-martial; he found it was clear based on DA's testimony and the content of the statements themselves the victims wanted these statements presented at Appellant's trial; and he opined that "[t]o conclude otherwise would deprive these victims of their statutory rights under Article 6b[, UCMJ]." Finally, he stated he would not consider those portions of Court Exhibit 1 that fell outside the definition of victim impact, as identified by the Defense.

**2. Law**

"Interpreting R.C.M. 1001A is a question of law, which we review de novo." *United States v. Barker*, 77 M.J. 377, 382 (C.A.A.F. 2018) (citations omitted). However, we review a military judge's decision to accept a victim impact statement offered pursuant to R.C.M. 1001A for an abuse of discretion. *Id.* at 383 (citing *United States v. Humpherys*, 57 M.J. 83, 90 (C.A.A.F. 2002)). "The 'judge

---

[3] The military judge had previously appointed DA as the legal representative of LAR, PA, and EA for purposes of Appellant's court-martial. *See* R.C.M. 801(a)(6).

[4] These statements included the description of one individual's reaction to seeing a photograph of Appellant on social media shortly before the trial; a sentence recommendation; a reference to uncharged misconduct by Appellant; and a comment on Appellant's failure to apologize to LAR's family.

abuses his discretion if his findings of fact are clearly erroneous or his conclusions of law are incorrect.'" *Humpherys*, 57 M.J. at 90 (quoting *United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F. 1995)).

R.C.M. 1001A(e) provides that during presentencing proceedings, the victim of an offense of which the accused has been found guilty

> may make an unsworn statement and may not be cross-examined by the trial counsel or defense counsel upon it or examined upon it by the court-martial. The prosecution or defense may, however, rebut any statements of facts therein. The unsworn statement may be oral, written, or both. When a victim is under 18 years of age, incompetent, incapacitated, or deceased, the unsworn statement may be made by the victim's designee appointed under R.C.M. 801(a)(6). Additionally, a victim under 18 years of age may elect to make an unsworn statement.

*See also* 10 U.S.C. § 806b(a)(4)(B) (stating the victim of an offense under the UCMJ has a right to be reasonably heard at a court-martial sentencing hearing). R.C.M. 1001A(b)(1) defines "crime victim" as one "who has suffered direct physical, emotional, or pecuniary harm as a result of the commission of an offense of which the accused was found guilty." "[T]he rights vindicated by R.C.M. 1001A are personal to the victim in each individual case." *Barker*, 77 M.J. at 382. "All of the procedures in R.C.M. 1001A contemplate the actual participation of the victim, and the statement being offered by the victim or through her counsel." *Id.* at 383. "Under R.C.M. 1001A [ ], a victim exercises the right to be reasonably heard by either offering an unsworn victim impact statement in person, or through a designated advocate as R.C.M. 1001A [ ] requires." *United States v. Hamilton*, 78 M.J. 335, 337 (C.A.A.F. 2019) (citing *Barker*, 77 M.J. at 383); *see* R.C.M. 1001A(a) ("If the victim exercises the right to be reasonably heard, the victim shall be called by the court-martial.")

When there is error regarding the presentation of victim statements under R.C.M. 1001A, the test for prejudice "is whether the error substantially influenced the adjudged sentence." *Barker*, 77 M.J. at 384 (quoting *United States v. Sanders*, 67 M.J. 344, 346 (C.A.A.F. 2009)).

**3. Analysis**

On appeal, the Defense renews its objections that the unsworn statements contained in Court Exhibit 1, except for those of DA and PA, were not properly presented; and that LAR's grandchildren, except for PA and EA who were involved in the collision, were not "crime victims" for purposes of R.C.M. 1001A because they suffered only indirect emotional harm. Because we agree with Appellant that the seven statements included in Court Exhibit 1, other than

those of DA and PA, were not properly presented to the court, we do not reach the question of whether LAR's grandchildren qualified as victims of the crime.

In *Barker*, the United States Court of Appeals for the Armed Forces (CAAF) explained:

> [T]he crime victim has an independent "right to be reasonably heard at a sentencing hearing," R.C.M. 1001A(a), though the military judge may permit the victim's counsel to "deliver all or part of the victim's unsworn statement." R.C.M. 1001A(e)(2). All of the procedures in R.C.M. 1001A contemplate the actual participation of the victim, and the statement being offered by the victim or through her counsel. Moreover, they assume the victim chooses to offer the statement for a particular accused . . . .

77 M.J. at 383. The military judge correctly noted that some of the deficiencies that plagued *Barker* were not present in Appellant's case. In *Barker*, the "trial counsel appear[ed] to have had no contact with [the victim], . . . and there [wa]s no indication that [she] was even aware of [the] trial." *Id*. In Appellant's case, there was evidence from DA's testimony and from the statements themselves that LAR's grandchildren knew about the court-martial and specifically wanted their statements presented to the court.

However, despite the military judge's conclusion that the "spirit and intent" of R.C.M. 1001A had been satisfied, Appellant's trial shared with *Barker* the error the CAAF found most significant: "Most importantly, the statements were not offered by either [the victim] or [their] advocate as R.C.M. 1001A requires." *Id*. In *Hamilton*, decided after Appellant's trial, the CAAF reiterated that a victim exercises the right to be heard under R.C.M. 1001A either "in person, or through a designated advocate." 78 M.J. at 337. The military judge had appointed DA to be the representative for PA and EA but not for any of the other grandchildren; none of the other grandchildren offered a statement personally, through counsel, or through a designated representative.

To be clear, we need not and do not decide here that actual appearance by a victim at the court-martial, either in person, by live remote means, or through counsel or a designated representative, is necessarily required in order to be heard pursuant to R.C.M. 1001A. *See Barker*, 77 M.J. at 382 ("[T]he introduction of statements under [R.C.M. 1001A] is prohibited without, at a minimum, either the presence *or request* of the victim, . . . the special victim's counsel, . . . or the victim's representative . . . ." (emphasis added)). For purposes of the instant case, it is sufficient to rely on our superior court's holdings that the victim, victim's counsel, or the victim's representative must offer the statement. Representations by a non-designated parent or by trial counsel are insufficient.

The military judge's concern that crime victims not be deprived of their statutory rights was laudable, but it was the Government's responsibility to ensure that victims were accurately informed of those rights; its failure to do so, or a victim's failure to follow the prescribed procedure, does not create an exception to the requirements of R.C.M. 1001A. In light of *Barker* and *Hamilton*, the military judge erroneously applied R.C.M. 1001A and abused his discretion.

Having found error, we test for prejudice by assessing "whether the error substantially influenced the adjudged sentence." *Id.* at 384 (quoting *Sanders*, 67 M.J. at 346). We consider the following factors: "(1) the strength of the Government's case; (2) the strength of the defense case; (3) the materiality of the evidence in question; and (4) the quality of the evidence in question." *Id.* (quoting *United States v. Bowen*, 76 M.J. 83, 89 (C.A.A.F. 2017)). Under the facts and circumstances of this case, we find Court Exhibit 1 did not substantially influence the military judge.

The Government's sentencing case was very strong. Appellant's egregious disregard for the safety of others led immediately to the violent death of a beloved mother and grandmother, in the presence of her daughter and two of her grandchildren who were injured in the same collision. Even without the seven improperly-presented statements, the Government adduced significant evidence of the emotional harm LAR's death caused her surviving family members, including all her grandchildren. Appellant's sentencing case was robust, including in-court testimony from his supervisor and nine statements from other noncommissioned officers attesting to his excellent duty performance, as well as testimony from Appellant's father. However, it was outweighed by the gravity of the Government's evidence.

Moreover, as in *Barker*, it is "highly relevant" that Appellant was sentenced by a military judge who is presumed to know the law. *Id.* (citing *United States v. Bridges*, 66 M.J. 246, 248 (C.A.A.F. 2008); *United States v. Erickson*, 65 M.J. 221, 224 (C.A.A.F. 2007)). In ruling on the Defense's objections to Court Exhibit 1, the military judge affirmed he "recognize[d] the unsworn statements were not evidence," was "well-aware of the limitations placed on the consideration of unsworn statements both by alleged victims and the accused," and would "not give these unsworn statements undo [sic] weight nor . . . consider them for an improper purpose."

Furthermore, "[a]n error is more likely to be prejudicial if the fact was not already obvious from the other evidence presented at trial and would have provided new ammunition against an appellant." *Id.* (citing *United States v. Harrow*, 65 M.J. 190, 200 (C.A.A.F. 2007)). The testimony of AA and DA, coupled with other evidence and the properly-presented unsworn statements of DA and PA, clearly portrayed for the military judge that LAR was survived by a loving

family including DA's ten children who grieved her loss, even without the improperly-presented statements. The improperly-presented statements contained information such as one would expect from grandchildren who, as described by their parents, "adored" and frequently spent time with their grandmother. They were not of a nature to change the tone or trajectory of the sentencing case, and thus their materiality in light of the entire case was low.

Finally, we note the military judge sentenced Appellant to eight years in confinement in addition to a dishonorable discharge, forfeiture of all pay and allowances, and reduction to the grade of E-1. In accordance with the PTA, the convening authority reduced the term of confinement to six years. Thus, to find an effect on the approved sentence, we would need to conclude the seven unsworn statements substantially influenced the military judge to increase the adjudged term of confinement by more than two years, or to have exerted a substantial influence in the military judge's decision to adjudge the dishonorable discharge, forfeitures, or reduction. We are confident this was not so. Accordingly, we conclude the error did not prejudice Appellant.

## B. Conditions of Confinement

### 1. Additional Background

In his clemency submission to the convening authority, Appellant's trial defense counsel asserted that the conditions of Appellant's post-trial confinement at the Roosevelt County Detention Center (RCDC) in Clovis, New Mexico, between 15 September 2018 and 3 November 2018 were unlawful.[5] Counsel asserted that Appellant was housed alone, and he was allowed outside for recreation purposes only between zero and two times per week for 30 to 60 minutes at a time. Although trial defense counsel acknowledged Appellant's cell was furnished with three bunked beds, a shower, a toilet, a sink, a television, and a phone, and he was allowed to have books, Appellant did not have access to exercise equipment, classes, or counseling, and his only human interaction was with correctional officers.

The Government responded to Appellant's claim of unlawful post-trial confinement at the RCDC by submitting declarations from the Chief of Military Justice and the Noncommissioned Officer in Charge of Military Justice at Kirtland Air Force Base, and the RCDC Jail Administrator. Collectively, these declarations indicate the following: Appellant was confined in a minimum custody day room designed to house up to six inmates. The other areas of the facility where Appellant might have been confined were all similar in design. In

---

[5] The record contains conflicting information as to whether Appellant departed the RCDC on 3 November 2018 or 6 November 2018. However, the exact end date does not affect our analysis of the issue.

general, Appellant received the same treatment as other RCDC confinees; however, in accordance with the Memorandum of Agreement between the RCDC and Air Force authorities, Appellant was confined separately in order to avoid housing him with foreign nationals in violation of Article 12, UCMJ, 10 U.S.C. § 812.[6] A mental health counselor observed Appellant seven times, and a mental health provider observed him once during his time at RCDC. Medical personnel checked on Appellant twice a day; on one occasion he was provided medicine for a medical condition. Appellant was allowed the opportunity for outside recreation for one hour each day. Appellant was informed of the process for submitting grievances and informal complaints at the RCDC; however, he never complained formally or informally while at the RCDC.

### 2. Law

We review de novo whether an appellant has been subjected to impermissible conditions of confinement in violation of the Eighth Amendment[7] or Article 55, UCMJ, 10 U.S.C. § 855. *United States v. Wise*, 64 M.J. 468, 473 (C.A.A.F. 2007) (citing *United States v. White*, 54 M.J. 469, 471 (C.A.A.F. 2001)).

"Both the Eighth Amendment and Article 55, UCMJ, prohibit cruel and unusual punishment. In general, we apply the Supreme Court's interpretation of the Eighth Amendment to claims raised under Article 55, UCMJ, except where legislative intent to provide greater protections under Article 55, UCMJ, is apparent." *United States v. Gay*, 74 M.J. 736, 740 (A.F. Ct. Crim. App. 2015) (citing *United States v. Avila*, 53 M.J. 99, 101 (C.A.A.F. 2000)), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016). To demonstrate a violation of the Eighth Amendment, an appellant must show:

> (1) an objectively, sufficiently serious act or omission resulting in the denial of necessities; (2) a culpable state of mind on the part of prison officials amounting to deliberate indifference to [his] health and safety; and (3) that he "has exhausted the prisoner-grievance system . . . and that he has petitioned for relief under Article 138, UCMJ, 10 USC § 938 [2000]."

*United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006) (omission and second alteration in original) (internal citations omitted).

---

[6] Effective 1 January 2019, Article 12, UCMJ, was amended to remove the general prohibition on holding military confinees with foreign nationals. *See* 10 U.S.C. § 812, *Manual for Courts-Martial, United States* (2019 ed.).

[7] U.S. CONST. amend. VIII.

Pursuant to our broad authority and mandate under Article 66(c), UCMJ, 10 U.S.C. § 866(c), to approve only so much of the sentence as we find appropriate in law and fact, we may grant sentence relief for a legal deficiency or error in an appellant's post-trial treatment that does not constitute an Eighth Amendment or Article 55, UCMJ, violation. *See United States v. Gay*, 75 M.J. 264, 269 (C.A.A.F. 2016); *see also United States v. Tardif*, 57 M.J. 219, 223 (C.A.A.F. 2002). However, "[o]nly in very rare circumstances do we anticipate granting sentence relief when there is no violation of the Eighth Amendment or Article 55, UCMJ." *United States v. Ferrando*, 77 M.J. 506, 517 (A.F. Ct. Crim. App. 2017) (citations omitted).

### 3. Analysis

On appeal, Appellant contends that we should exercise our authority under Article 66, UCMJ, to grant him day-for-day confinement credit for the conditions of his confinement at the RCDC. He contends his placement in "solitary confinement" was "unwarranted" and "more severe than necessary." Appellant relies on trial defense counsel's clemency memorandum to the convening authority and has not supplemented his claim with a declaration regarding his isolation or general conditions of confinement at the RCDC.[8]

As an initial matter, we assess the import of the CAAF's recent decision in *United States v. Jessie*, ___ M.J. ___, No. 19-0192, 2020 CAAF LEXIS 188 (C.A.A.F. 6 Apr. 2020), on our consideration of this issue. In *Jessie*, the CAAF analyzed three lines of precedent with respect to whether a Court of Criminal Appeals (CCA) may consider matters outside the "entire record" in reviewing the findings and sentence of a court-martial pursuant to Article 66, UCMJ. *Jessie*, 2020 CAAF LEXIS 188, at *5–22. The CAAF cited *United States v. Fagnan*, 12 C.M.A. 192 (C.M.A. 1961), for the general rule "that the CCAs may not consider anything outside of the 'entire record' when reviewing a sentence under Article 66(c), UCMJ." *Jessie*, 2020 CAAF LEXIS 188, at *9 (citation omitted). The CAAF explained that for purposes of Article 66, UCMJ, the "entire record" included the "record of trial" and "matters attached to the record" in accordance with R.C.M. 1103(b)(2) and (3), as well as "briefs and arguments that government and defense counsel (and the appellant personally) might present regarding matters in the record of trial and 'allied papers.'" *Id.* at *8 (citing *United States v. Healy*, 26 M.J. 394, 396 (C.M.A. 1988)). However, the CAAF also recognized that "some [of its] precedents have allowed the CCAs to supplement the record when deciding issues that are raised by materials in the record," specifically with affidavits or hearings ordered pursuant to *United States v. DuBay*, 37 C.M.R. 411 (C.M.A. 1967) (per curiam). *Jessie*, 2020 CAAF

---

[8] Appellant did submit a declaration in support of the third issue he raises—that the Government failed to provide him with a copy of the record of trial.

LEXIS 188, at *12 (citation omitted). In addition, the CAAF identified a third line of precedent "allow[ing] appellants to raise and present evidence of claims of cruel and unusual punishment and violations of Article 55, UCMJ, even though there was nothing in the record regarding those claims." *Id.* at *19.

In the instant case, in arguing for relief for the conditions of his confinement at the RCDC, Appellant relies on material contained in the "record," which includes, *inter alia*, Appellant's post-trial clemency submissions to the convening authority. *See id.* at *8 (citing R.C.M. 1103(b)(2), (3)). Therefore, we clearly have jurisdiction to review Appellant's claim. We also understand *Jessie* to permit our review of the responsive declarations outside the original record that the Government has moved this court to attach, consistent with the second line of precedent the CAAF recognized in *Jessie*. Although the CAAF declined to specifically endorse this line of precedent in *Jessie*, neither did it overrule it. *See id.* at *18–19. We further note that, even if we did not consider the Government's submissions, we would still not find in Appellant's favor based on his inadequate showing.

Because there is some factual dispute between trial defense counsel's clemency memorandum and the RCDC Jail Administrator's declaration, we have considered whether a post-trial evidentiary hearing is required to resolve the conflict. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997); *DuBay*, 37 C.M.R. at 413. We are convinced such a hearing is not required in this case; even if we accept Appellant's version of events as accurate, he would not be entitled to relief. *See Ginn*, 47 M.J. at 248.

Turning to the substance of Appellant's claims, he does not assert that the conditions of his confinement at the RCDC violated the Eighth Amendment or Article 55, UCMJ, and we find none of the three prongs required for such a showing have been met. *See Lovett*, 63 M.J. at 215. Instead, Appellant compares the circumstances of his confinement to that in *Gay* and contends this court should grant him relief as a matter of sentence appropriateness under Article 66, UCMJ, as we did in *Gay*. *See Gay*, 75 M.J. at 268–69. We are not persuaded. As the CAAF recognized, our decision to grant relief in *Gay* was based on several factors unique to that case, including that the appellant was unnecessarily placed in solitary confinement, apparently at the direction of an Air Force official rather than based on any requirement of the civilian confinement facility. *Id.* There are no equivalent circumstances in Appellant's case, nor any other factors amounting to a legal deficiency that would warrant or authorize this court to grant relief as a matter of law. *See id.* at 269 (CCA authority to grant sentence relief is not unlimited and is bounded by the requirement of a legal error or deficiency). Moreover, although not dispositive, we note that Appellant filed no grievances or Article 138, UCMJ, complaints during his stay at the RCDC, and he was confined in a living area designed to house up

to six individuals. In short, Appellant's case is not one of those "very rare circumstances" in which the conditions of confinement warrant sentence relief in the absence of an Eighth Amendment or Article 55, UCMJ, violation. *See Ferrando*, 77 M.J. at 517.

## C. Post-Trial Process

### 1. Law

"The proper completion of post-trial processing is a question of law the court reviews de novo." *United States v. Zegarrundo*, 77 M.J. 612, 613–14 (A.F. Ct. Crim. App. 2018) (citing *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)). Failure to comment in a timely manner on matters in or attached to the SJAR forfeits a later claim of error; we analyze such forfeited claims for plain error. *Id.* at 614 (citations omitted). "To prevail under a plain error analysis, Appellant must persuade this Court that: '(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right.'" *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005) (quoting *Kho*, 54 M.J. at 65) (additional citation omitted).

Other than claims of punishment in violation of the Eighth Amendment or Article 55, UCMJ, Article 66, UCMJ, does not authorize a CCA to "consider materials outside the 'entire record' when reviewing issues that were not raised by anything in the record." *Jessie*, 2020 CAAF LEXIS 188, at *15.

### 2. Analysis

Appellant asserts the Government failed to provide him with a copy of the record of the proceedings as it was required to do under Article 54(d), UCMJ, 10 U.S.C. § 854(d). The record of trial includes a receipt indicating Appellant was served with a copy of the record on 24 October 2018, 12 days before the Defense submitted clemency matters to the convening authority on 5 November 2018. Appellant's claim relies on a declaration he signed on 8 April 2019 and moved to attach in support of his assignments of error to this court, and is not supported by anything in the "entire record" as the CAAF explained that term in *Jessie*. *See* 2020 CAAF LEXIS 188, at *8. Accordingly, in light of our superior court's decision in *Jessie*, we are without authority to consider his declaration or the Government's responsive submissions under Article 66, UCMJ, and Appellant's assignment of error must fail.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

KEY, Judge (concurring in the result):

I agree with my colleagues in the majority in affirming Appellant's conviction and sentence. I write separately because I disagree with their conclusion that the military judge abused his discretion in admitting the letters from LAR's grandchildren under Rule for Courts-Martial (R.C.M.) 1001A.

The military judge received sworn testimony that DA's children—LAR's grandchildren—had authored letters "in reference to" Appellant's court-martial and that they wanted the letters considered at that court-martial. This testimony was a permissible source of information the military judge could rely on to assess whether to consider the letters. *See* Mil. R. Evid. 104(a).

Victims have the right to be reasonably heard during sentencing proceedings under Article 6b, UCMJ, 10 U.S.C. § 806b. Pursuant to R.C.M. 1001A(e), after findings are announced, a victim's unsworn statement to a court-martial may be presented in writing so long as a copy is provided to the military judge and the parties, as occurred here. The rule does not prescribe any particular method of delivering such a statement to a court-martial, nor does it specify who must state the victim's desires with respect to its consideration.

This court and our superior court have rejected written statements submitted by victims when there is no evidence the victims were aware of the courts-martial in which their statements were being presented, much less that they desired to exercise their rights to be reasonably heard at those specific courts-martial. *See United States v. Barker*, 77 M.J. 377 (C.A.A.F. 2018); *United States v. Shoup*, 79 M.J. 668 (A.F. Ct. Crim. App. 2019). Blanket requests to have statements considered in unspecified future cases have similarly been found inadequate because a statement must be presented "for a particular accused at a specific court-martial." *United States v. Hamilton*, 78 M.J. 335, 341–42 (C.A.A.F. 2019) (citing *Barker*, 77 M.J. at 383). The shortcomings in those cases, however, are not present in Appellant's case, where the military judge received evidence the victims knew of the proceedings, authored unsworn statements, and wished the statements to be considered by Appellant's court-martial.

I see no reason why a witness with personal knowledge, including a parent, cannot adequately communicate a victim's desire to be reasonably heard at a court-martial under R.C.M. 1001A. I would find that an adequate foundation was laid for the letters under R.C.M. 1001A, as DA testified her children requested they be heard at Appellant's court-martial through their letters. As a

result, I conclude the military judge did not abuse his discretion in considering the letters.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court