# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39601**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Dillon J. HAGGART**
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 24 June 2020

————————————

*Military Judge:* Shelly W. Schools.

*Approved sentence:* Dishonorable discharge, confinement for 6 months, forfeiture of all pay and allowances, reduction to E-1, and a reprimand. Sentence adjudged 22 August 2018 by GCM convened at Robins Air Force Base, Georgia.

*For Appellant:* Major David A. Schiavone, USAF; Mark C. Bruegger, Esquire.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel Brian C. Mason, USAF; Major Peter F. Kellett, USAF; Mary Ellen Payne, Esquire.

Before J. JOHNSON, LEWIS, and POSCH, *Appellate Military Judges.*

Chief Judge J. JOHNSON delivered the opinion of the court, in which Judge LEWIS and Judge POSCH joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

J. JOHNSON, Chief Judge:

The military judge found Appellant guilty, in accordance with his pleas, of one specification of failure to obey a lawful order, one specification of false official statement, and one specification of sexual assault of a child on divers occasions, in violation of Articles 92, 107, and 120b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 907, 920b.[1,2] A general court-martial composed of officer members sentenced Appellant to a dishonorable discharge, confinement for six months, forfeiture of all pay and allowances, reduction to the grade of E-1, and a reprimand. The convening authority approved the adjudged sentence.

Appellant raises three issues on appeal: (1) whether the military judge abused her discretion by denying the Defense's request to admit evidence in sentencing of other sexual behavior by a victim under Military Rule of Evidence 412; (2) whether the military judge abused her discretion when she permitted a sentencing witness to testify while wearing a high school softball uniform; and (3) whether the conditions of Appellant's post-trial confinement were cruel and unusual under the Eighth Amendment[3] and Article 55, UCMJ, 10 U.S.C. § 855, or otherwise warrant relief.[4] We find no error that resulted in material prejudice to Appellant's substantial rights, and we affirm the findings and sentence.

## I. BACKGROUND

Appellant was stationed and lived on Robins Air Force Base (AFB), Georgia, in 2017 when the events giving rise to his court-martial took place. Appellant's convictions are based on his actions with two 15-year-old girls, AN and AW, as described below.

### A. AN

In March 2017, Appellant met AN through Tinder, a dating application. Appellant initially assumed AN was at least 18 years old because that is the

---

[1] All references in this opinion to the Uniform Code of Military Justice (UCMJ), Rules for Courts-Martial (R.C.M.), and Military Rules of Evidence are to the *Manual for Courts-Martial, United States* (2016 ed.).

[2] In accordance with Appellant's pleas, the military judge found Appellant guilty of the specification alleging violation of a lawful order by exception and substitution.

[3] U.S. CONST. amend. VIII.

[4] Appellant personally raises issue (3) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

age requirement to use Tinder. However, AN soon informed him she was only 15 years old. Nevertheless, Appellant continued communicating with AN.

A few days after Appellant's first contact with AN on Tinder, he drove to the town where she lived, approximately one hour away, and met her in person. After spending some time together that day, Appellant drove AN to Robins AFB and brought her to his dormitory room, where she spent the night. At some point during her stay, Appellant engaged in vaginal sexual intercourse with AN.

Appellant told the military judge that he had a second sexual encounter with AN "very soon" after the first. The circumstances were very similar to the first occasion: Appellant drove to the town where AN lived, picked her up, spent some time with her "in town," and then brought her back to his dormitory room where AN spent the night. As before, at some point during the night Appellant and AN engaged in vaginal sexual intercourse.

Appellant's activities with AN subsequently came to the attention of the Air Force Office of Special Investigations (AFOSI), which opened an investigation. AFOSI agents interviewed Appellant on 1 August 2017. Appellant initially flatly denied knowing AN, although after a few minutes of questions by the skeptical agents he admitted he did know her, and eventually further admitted that he had sex with her twice. This initial denial was the basis for Appellant's conviction for false official statement.

**B. AW**

Although the timing is unclear, at some point after Appellant's encounters with AN, he met AW at the church Appellant and AW attended. AW was 15 years old at the time. The two became friends and in time developed "very strong feelings" for one another, according to AW's testimony. However, it was a "talking relationship" rather than a physical relationship, and according to AW, Appellant never attempted to engage, or even talked about engaging, in sexual activity with her. However, AW's father disapproved of this chaste relationship and after three weeks ordered AW to end it.

At some point, Appellant's relationship with AW also came to the attention of Appellant's squadron commander. On 2 October 2017, the commander issued Appellant an oral and written order directing Appellant to have no contact and not to communicate with AW, including by email and through third parties, until 30 April 2018, unless rescinded earlier. Appellant understood the order, and in November 2017 complained about it to a friend, SH. Appellant provided SH with AW's email address; although he did not ask SH to contact AW or provide SH a message for AW, he knew SH likely would contact AW and relay any information from AW back to him. That is in fact what occurred; SH contacted AW—who she did not know—and exchanged a series of emails with

her, and SH then relayed information from those exchanges to Appellant. Appellant did not report this indirect contact to his commander or to other supervisors or authorities. Appellant's provision of AW's email address to SH was the basis for his conviction for disobeying a lawful order by wrongfully "facilitating" a third party to communicate with AW.[5]

## II. DISCUSSION

### A. Mil. R. Evid. 412

#### 1. Additional Background

Before trial, the Defense moved to admit evidence of other sexual behavior by AN, the victim of the sexual assault, pursuant to Mil. R. Evid. 412.[6] Specifically, the Defense sought to admit evidence that AN had met other adult men in addition to Appellant over social media, and had engaged in sexual relationships with other adult men. The Defense contended such evidence was constitutionally required in order to demonstrate AN misrepresented herself as being 18 years old to Appellant and others, in support of a potential defense of mistake of fact on Appellant's part. The Defense further contended this evidence would be required for sentencing in order to "accurately contextualize" the charged sexual assault of a minor, because AN's other sexual experiences would be relevant to rebut any implications that Appellant "preyed" on AN or conducted their relationship without her active participation. The Government and AN—through her Special Victims' Counsel (SVC)—opposed the motion.

After conducting a closed hearing, receiving evidence, and hearing argument in accordance with Mil. R. Evid. 412(c)(2), the military judge denied the defense motion with respect to findings. She found the Defense had failed to demonstrate the evidence in question was relevant, material, and favorable with respect to Appellant's subjective belief as to AN's age, or to the objective reasonableness of such a belief. The military judge found the Defense had presented no evidence that AN had told Appellant or anyone else with whom she had engaged in sexual activity that she was 18 years old or over the age of

---

[5] Appellant was charged with violating the no-contact order by "directing" a third party to contact AW. In accordance with Appellant's plea, the military judge excepted the word "directing" from the specification and substituted for it the word "facilitating;" she found Appellant guilty of the substituted word and of the specification. The Government did not attempt to prove the excepted word, of which the military judge found Appellant not guilty.

[6] The trial transcript, appellate exhibits, and briefs addressing this excluded evidence were sealed pursuant to R.C.M. 1103A. These portions of the record and briefs remain sealed, and any discussion of sealed material in this opinion is limited to that which is necessary for our analysis. *See* R.C.M. 1103A(b)(4).

consent; moreover, she noted Appellant admitted in his recorded interview with AFOSI that AN told him she was 15 years old before they had sex. With respect to sentencing, the military judge found the Mil. R. Evid. 412 issue was not ripe, and would depend on whether Appellant was convicted of the Article 120b, UCMJ, offense and, if so, whether the Government introduced evidence of victim impact.

Appellant subsequently pleaded guilty to the sexual assault of AN. The military judge and parties returned to the Mil. R. Evid. 412 motion during sentencing proceedings after the military judge reviewed a copy of the victim impact statement AN submitted through her SVC pursuant to Rule for Courts-Martial (R.C.M.) 1001A. In a closed hearing, senior defense counsel explained the Defense sought to introduce evidence that AN met other men besides Appellant through Tinder who engaged in sexual acts with her around the same time frame that she met Appellant, and that AN kept a record of men who, like Appellant, were virgins. Senior trial counsel opposed the defense request. However, the military judge described AN's statement as "incredibly misleading," in that it implied Appellant was the only adult man with whom she had engaged in sexual activity. The military judge indicated she was inclined to allow the Defense to introduce the Mil. R. Evid. 412 evidence in response to AN's statement. As a result, AN's SVC withdrew AN's unsworn statement.

After the statement was withdrawn, the Defense maintained its motion to admit the Mil. R. Evid. 412 information. Senior defense counsel argued it was necessary to rebut a presumption that Appellant was the more "sexually mature" individual in the relationship and in the "stronger power position sexually." Senior trial counsel maintained the Government's objection, observing that AN was the victim of the offense regardless of any other experiences she may have had. AN's SVC also continued to oppose the motion, contending this was exactly the type of information Mil. R. Evid. 412 was intended to exclude.

The military judge denied the motion. She found the withdrawal of AN's statement left the proffered evidence with little probative value, such that it was no longer constitutionally required. Instead of rebuttal evidence, it became "purely other sexual behavior of the victim, which is the kind of evidence that is prohibited under the rule." The military judge found the fact that AN may have been victimized by other adult men was not "particularly mitigating or extenuating for the accused."

### 2. Law

"We review the military judge's ruling on whether to exclude evidence pursuant to M.R.E. 412 for an abuse of discretion." *United States v. Ellerbrock*, 70 M.J. 314, 317 (C.A.A.F. 2011) (citing *United States v. Roberts*, 69 M.J. 23, 26 (C.A.A.F. 2010)). The military judge's findings of fact are reviewed for clear

error and her conclusions of law are reviewed de novo. *Id.* (citing *Roberts*, 69 M.J. at 26). "A military judge abuses [her] discretion when: (1) the findings of fact upon which [s]he predicates [her] ruling are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if [her] application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008)). "For [a] ruling to be an abuse of discretion, it must be 'more than a mere difference of opinion'; rather, it must be 'arbitrary, fanciful, clearly unreasonable' or 'clearly erroneous.'" *United States v. Collier*, 67 M.J. 347, 353 (C.A.A.F. 2009) (quoting *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000) (additional citations omitted)).

Mil. R. Evid. 412 provides that in any proceeding involving an alleged sexual offense, evidence offered to prove the alleged victim engaged in other sexual behavior or has a sexual predisposition is generally inadmissible, with three limited exceptions. The burden is on the defense to overcome the general rule of exclusion by demonstrating an exception applies. *United States v. Carter*, 47 M.J. 395, 396 (C.A.A.F. 1998) (citation omitted).

The third exception under Mil. R. Evid. 412 provides that the evidence is admissible if its exclusion "would violate the constitutional rights of the accused." Mil. R. Evid. 412(b)(1)(C). Generally, evidence of other sexual behavior by an alleged victim is constitutionally required and "must be admitted within the ambit of [Mil. R. Evid.] 412(b)(1)(C) when [it] is relevant, material, and the probative value of the evidence outweighs the dangers of unfair prejudice." *Ellerbrock*, 70 M.J. at 318 (citation omitted). Relevant evidence is evidence that has any tendency to make the existence of any fact of consequence to determining the case more probable or less probable than it would be without the evidence. Mil. R. Evid. 401. Materiality "is a multi-factored test looking at the importance of the issue for which the evidence was offered in relation to the other issues in this case; the extent to which the issue is in dispute; and the nature of the other evidence in the case pertaining to th[at] issue." *Id.* (alteration in original) (internal quotation marks and citations omitted). The dangers of unfair prejudice to be considered "include concerns about 'harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *Id.* (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

In sentencing, "the defense may present matters in rebuttal of any material presented by the prosecution and may present matters in extenuation and mitigation regardless whether the defense offered evidence before findings." R.C.M. 1001(c)(1). Mil. R. Evid. 412 applies to sentencing proceedings as well as the findings portion of the trial. *United States v. Fox*, 24 M.J. 110, 112 (C.M.A. 1987).

### 3. Analysis

Appellant asserts the military judge abused her discretion by denying the Defense's Mil. R. Evid. 412 motion with respect to sentencing. Similar to the defense argument at trial, he contends the evidence was necessary in order for the court members to understand the true impact of the offense on AN. He argues that the offense of sexual assault of a child "implies a certain amount of victim impact that would likely increase the panel's starting point for an appropriate sentence," absent evidence to the contrary. Appellant concludes that evidence AN engaged in sexual activity with other adult men would tend to reduce the blame attributed to himself, and was therefore constitutionally required.

We find the military judge did not abuse her discretion. She very reasonably concluded that once this evidence lost its rebuttal value when AN's statement was withdrawn, its probative value and materiality were low. What was relevant for the court members to consider in deciding Appellant's sentence was his own behavior with AN. The fact that other adult men may have engaged in sexual intercourse with AN did not substantially tend to negate Appellant's blameworthiness. The law does not protect less a 15-year-old with whom multiple men have had sex than a 15-year-old with whom they have not.

To find the victim's sexual history was constitutionally required to be admitted in order to understand the "true impact" of the offense in Appellant's case would imply there is some undefined threshold level of sexual activity by a victim, applicable in other sexual assault cases as well, at which Mil. R. Evid. 412 protections cease. We believe a greater showing of necessity in order to protect an accused's right to a fair trial is required, than the implication that a victim—particularly a child—who has engaged in other sexual activity is harmed less by sexual assault than a victim who has not.

Accordingly, the military judge could properly conclude that any probative value was outweighed by countervailing concerns including distraction, confusion of the issues, and prejudice to the factfinding process. *See Ellerbrock*, 70 M.J. at 318 (citation omitted).

## B. AW's Softball Uniform

### 1. Additional Background

The Government called AW to testify as a sentencing witness at 1655 hours on 21 August 2018. Immediately before calling AW to the stand, senior trial counsel informed the military judge that "because [AW] was picked up directly from school she is in a softball uniform and not in ordinary court attire." Senior defense counsel objected to AW "testifying in her softball uniform and highlighting her age . . . ." She explained,

> [T]he concern here is obviously the impression that it paints that [Appellant] is engaged in some sort of pattern of behavior to which [sic] he is not to be charged. The allegation that pertains to her is that of a violation of a no-contact order. And so anything that, again, goes to highlight her age and the fact that she is in school and things of that nature, we would object to that.

The military judge responded: "Understood. I disagree. Her age is what it is. I mean, she can testify to her age. She is 15 [sic], she's in school; it is what it is. So the objection is overruled."

At the Government's request, before AW testified the military judge instructed the court members that, with the military judge's permission, AW was wearing a softball uniform because she had been brought from school. AW testified, *inter alia*, that she was 16 years old at the time of her testimony, and 15 years old when she met Appellant.

**2. Law**

We review for an abuse of discretion both a military judge's control over the mode of witness interrogation pursuant to Mil. R. Evid. 611 and her exercise of reasonable control over court proceedings pursuant to R.C.M. 801. *United States v. Brown*, 72 M.J. 359, 362 (C.A.A.F. 2013) (citing *Collier*, 67 M.J. at 353–54; *United States v. Satterley*, 55 M.J. 168, 171 (C.A.A.F. 2001)) (additional citation omitted).

Mil. R. Evid. 611(a) provides: "The military judge should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment."

The military judge is responsible for "[e]nsur[ing] that the dignity and decorum of the proceedings are maintained" and "exercis[ing] reasonable control over the proceedings to promote the purposes of these [Rules for Courts-Martial] and this Manual." R.C.M. 801(a)(2), (3). "The military judge may, within the framework established by the [UCMJ] and this Manual, prescribe the manner and order in which the proceedings may take place." R.C.M. 801(a)(3), Discussion. "The military judge should prevent unnecessary waste of time and promote the ascertainment of truth . . . ." *Id.*

**3. Analysis**

Appellant contends the military judge abused her discretion by permitting AW to testify in her softball uniform. He asserts there was "no reason" to do so when the military judge could have instead adjourned the court-martial for the day and directed that AW appear the following morning in appropriate attire.

8

He argues the military judge's decision unfairly prejudiced him because "a soft-ball uniform associates its wearer with youth and immaturity," and AW's youth was not an appropriate matter in aggravation of Appellant's violation of the no-contact order. Appellant contends the military judge's ruling played into the hands of assistant trial counsel, who repeatedly emphasized AW's age in his sentencing argument. Appellant suggests the military judge's ruling violated his Fifth Amendment[7] right to due process of law, which the Government could not demonstrate was harmless beyond a reasonable doubt.[8] Accordingly, Appellant argues this court should set aside his sentence. We disagree.

Contrary to Appellant's argument, the military judge plainly did have a reason to permit AW to testify in the uniform she had been brought to court in—to "avoid wasting time," as Mil. R. Evid. 611(a) enjoins military judges to do. Moreover, we cannot see how the military judge's ruling impaired "the ascertainment of truth." R.C.M. 801(a)(3), Discussion. AW's clothing had no effect on the substance of her testimony. The court members were well aware of AW's age both from her own testimony as well as Appellant's guilty plea inquiry with the military judge, which was played for the court members at the Government's request. The court members also knew what high school AW attended from her testimony. There is no indication that AW's uniform was inappropriate for her age, and we find no basis to infer that a high school sports uniform worn by a high school student was in any way misleading or inflammatory under the circumstances.

As for the Government's sentencing argument, we cannot see how assistant trial counsel's argument retroactively rendered the military judge's ruling with regard to AW's uniform an abuse of discretion. It is true that assistant trial counsel repeatedly emphasized AW's age, but he did not refer to her uniform, and the Defense did not object to any of these references to AW's age that Appellant complains of on appeal. Furthermore, Appellant acknowledges the military judge gave the court members a clarifying instruction immediately after the Government's argument, that Appellant was "to be sentenced for violating

---

[7] U.S. CONST. amend. V.

[8] Because we find no abuse of discretion, we find it unnecessary to address Appellant's argument with regard to prejudice. However, we note that we are not persuaded by Appellant's bare reference to the Fifth Amendment's guarantee of due process, without further citation to relevant authority, that such an error would be of constitutional dimensions. The cases Appellant cites in support of this assertion involve errors of an entirely different character to a witness's attire. *See United States v. Tovarchavez*, 78 M.J. 458, 460 (C.A.A.F. 2019) (involving the constitutional right to a presumption of innocence); *United States v. Wolford*, 62 M.J. 418, 420 (C.A.A.F. 2006) (involving allegedly erroneous findings instructions).

a no-contact order and not for any specific impropriety with regard to his relationship with [AW]." *See United States v. Taylor*, 53 M.J. 195, 198 (C.A.A.F. 2000) (citations omitted) (holding court members are presumed to follow the military judge's instructions absent evidence to the contrary).

To the extent the fact that AW was 15 years old when Appellant met her, and 16 years old at the time of his trial, was unhelpful to the Defense, we are inclined to agree with the military judge that "it is what it is." In light of the military judge's responsibility to avoid unnecessary delay and the absence of apparent prejudice to the ascertainment of truth, we conclude the military judge's ruling was neither arbitrary, fanciful, clearly unreasonable, nor clearly erroneous. *See Collier*, 67 M.J. at 353 (citations omitted).

## C. Post-Trial Confinement Conditions

### 1. Additional Background

After Appellant's court-martial concluded, he was confined in the Bibb County Jail in Macon, Georgia, for 55 days before he was transferred to a military confinement facility. Appellant's clemency memorandum to the convening authority complained about numerous aspects of his confinement at the jail. Appellant asserted: (1) he was allowed "outside" only five times during these 55 days, three of those times being for appointments outside the jail; (2) the intercom Appellant had in his cell to communicate with confinement personnel was ineffective; (3) Appellant was housed in an individual cell in the infirmary section of the jail, where confinees who were experiencing drug-related health problems, were "overly aggressive," or were suffering mental health problems were housed and were often very noisy at all hours of the day; (4) the jail staff did not always inform him when he received video calls from his girlfriend and family; (5) one day he was not provided lunch, even after informing a member of the staff that he had not received it; (6) in 55 days he was allowed to shower only five times and allowed to change clothes only four times, although he attempted to compensate by washing his clothes in his sink; and (7) from day 14 until day 50, he was held in a cell that "had visible dried-up traces of what appeared to be snot and blood on the walls [and] ceiling," which was cleaned only after repeated requests. Appellant, personally and through her SVC, cited these conditions as part of the basis for Appellant's request that the convening authority reduce his term of confinement or, alternatively, disapprove the adjudged forfeitures, reduction in rank, and reprimand.

On appeal, Appellant has submitted to this court an additional declaration. Appellant asserts that he was unaware of any procedure for confinees to make complaints or requests or to file grievances at the jail. He asserts that if he had

been aware of such procedures he would have used them; as it was, he attempted to address concerns by using the faulty cell intercom and asking his first sergeant to make requests on his behalf.

In response, the Government has provided a declaration from JL, a lieutenant assigned to the Bibb County Jail. Lieutenant JL stated that during Appellant's confinement at the jail, all inmates were informed and had access to a grievance system, but according to jail records Appellant never filed a grievance. In addition, Lieutenant JL explained that military confinees were housed in the infirmary for safety reasons to "separate them from other dangerous inmates." Lieutenant JL further asserted that confinees were afforded "one phone call a day, three hours outside their cell a week depending on security issues within the jail, three showers a week, and two changes of clothes a week."

**2. Law**

We review de novo whether an appellant has been subjected to impermissible conditions of confinement in violation of the Eighth Amendment or Article 55, UCMJ, 10 U.S.C. § 855. *United States v. Wise*, 64 M.J. 468, 473 (C.A.A.F. 2007) (citing *United States v. White*, 54 M.J. 469, 471 (C.A.A.F. 2001)).

"Both the Eighth Amendment and Article 55, UCMJ, prohibit cruel and unusual punishment. In general, we apply the Supreme Court's interpretation of the Eighth Amendment to claims raised under Article 55, UCMJ, except where legislative intent to provide greater protections under Article 55, UCMJ, is apparent." *United States v. Gay*, 74 M.J. 736, 740 (A.F. Ct. Crim. App. 2015) (citing *United States v. Avila*, 53 M.J. 99, 101 (C.A.A.F. 2000)), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016). To demonstrate a violation of the Eighth Amendment, an appellant must show:

> (1) an objectively, sufficiently serious act or omission resulting in the denial of necessities; (2) a culpable state of mind on the part of prison officials amounting to deliberate indifference to [his] health and safety; and (3) that he "has exhausted the prisoner-grievance system . . . and that he has petitioned for relief under Article 138, UCMJ, 10 USC § 938 [2000]."

*United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006) (omission and second alteration in original) (internal citations omitted).

Pursuant to our broad authority and mandate under Article 66(c), UCMJ, 10 U.S.C. § 866(c), to approve only so much of the sentence as we find appropriate in law and fact, we may grant sentence relief for a legal deficiency or error in an appellant's post-trial treatment that does not constitute an Eighth Amendment or Article 55, UCMJ, violation. *See United States v. Gay*, 75 M.J. 264, 269 (C.A.A.F. 2016); *see also United States v. Tardif*, 57 M.J. 219, 223

(C.A.A.F. 2002). However, although we have great discretion to determine whether a sentence is appropriate, we have no authority to grant mercy. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citing *United States v. Boone*, 49 M.J. 187 (C.A.A.F. 1998)).

### 3. Analysis

On appeal, Appellant personally asserts the conditions of his confinement at the Bibb County Jail that he described in his clemency submission amounted to cruel and unusual punishment in violation of the Eighth Amendment and Article 55, UCMJ, that warrants setting aside his bad-conduct discharge. Alternatively, Appellant contends that if we do not find a violation of the Eighth Amendment or Article 55, UCMJ, this court "should grant sentence appropriateness relief in the interest of justice." We are not persuaded.[9]

Because there are substantial factual disputes between Appellant's assertions in his clemency submission and declaration to this court and Lieutenant JL's declaration, we have considered whether a post-trial evidentiary hearing is required to resolve the conflict. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997); *United States v. DuBay*, 37 C.M.R. 411, 413 (C.M.A. 1967) (per curiam). We find such a hearing is not required in this case; even if we accept Appellant's version of events as accurate, he would not be entitled to relief. *See Ginn*, 47 M.J. at 248.

Appellant fails to demonstrate a violation of his Eighth Amendment rights based on the criteria set forth in *Lovett*, 63 M.J. at 215. The conditions he describes are certainly unpleasant, but they are not so severe as to constitute a denial of necessities. Moreover, even if we were to excuse Appellant's failure to use the jail's grievance procedure based on his assertion, contrary to Lieutenant JL's declaration, that he was unaware of it, he also failed to file a complaint pursuant to Article 138, UCMJ, as *Lovett* requires. *See id.*

We have also considered whether Appellant's assertions warrant sentence relief under our Article 66(c), UCMJ, authority in the absence of an Eighth Amendment or Article 55, UCMJ, violation. *See Gay*, 75 M.J. at 268. We find that they do not. This court has previously explained that "[o]nly in very rare circumstances do we anticipate granting sentence relief when there is no vio-

---

[9] We conclude we may consider the declarations Appellant and JL submitted to this court, in addition to Appellant's clemency submission which is included in the "entire record" of his court-martial, consistent with the decision of the United States Court of Appeals for the Armed Forces in *United States v. Jessie*, 79 M.J. 437, 439–45 (C.A.A.F. 2020), because Appellant specifically asserts violations of the Eighth Amendment and Article 55, UCMJ, and because they supplement the record with respect to an issue raised by material in the record.

lation of the Eighth Amendment or Article 55, UCMJ." *United States v. Ferrando*, 77 M.J. 506, 517 (A.F. Ct. Crim. App. 2017) (citations omitted). The conditions Appellant describes, although undeniably unpleasant, do not constitute one of those very rare circumstances in which Appellant's sentence has been rendered inappropriate as a matter of law.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.[10]

FOR THE COURT

Carol K. Joyce

CAROL K. JOYCE
Clerk of the Court

---

[10] We note an error in the court-martial order with respect to Charge II, where it incorrectly reflects a violation of "Article 120" rather than "Article 120b." We direct the publication of a corrected court-martial order to remedy this error.